**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
*Newport News Division*

**OCEANETICS, INC.,**
   Plaintiff,

v.                                            **Civil Action No. 4:26-cv-00090-MSD-DEM**

**MARINE1, LLC,**
   Defendant.

## THE DEFENDANT'S ANSWER TO THE COMPLAINT

*(Answer and Affirmative Defenses of Defendant Marine1, LLC — prepared in accordance with
form Pro Se 3 (Rev. 12/16) — Jury Trial: YES)*

Defendant Marine1, LLC ("Marine1" or "Defendant"), by and through Scott T. Snow, its sole member and manager, submits this Answer and these Affirmative Defenses to the Complaint of Plaintiff Oceanetics, Inc. ("Oceanetics" or "Plaintiff"). Marine1 files this Answer protectively, while its Motion for Extension of Time to Respond to the Complaint (ECF No. 10, filed July 24, 2026, requesting time to retain the counsel a business entity is required to have) remains pending before the Court and while Marine1 continues its diligent efforts to retain litigation counsel, and without waiver of any defense stated herein, including the absence of subject-matter jurisdiction. Marine1 acknowledges that a limited liability company ordinarily must appear in federal court through licensed counsel, and Mr. Snow does not ask the Court to waive that requirement; Marine1 respectfully requests that the Court accept this Answer provisionally to avoid any default, rule promptly on ECF No. 10, and permit licensed counsel, upon appearing, to amend this pleading as allowed by Federal Rule of Civil Procedure 15, including with respect to any counterclaims permitted or required by Rule 13. Except as expressly admitted below, Marine1 denies each and every allegation of the Complaint.

## I. THE PARTIES FILING THIS ANSWER

Page 1 of 22

Defendant filing this Answer: Marine1, LLC, a Michigan limited liability company, appearing by Scott T. Snow, its sole member and manager. Street Address: 300 Dandy Loop Road. City and County: Yorktown, York County. State and Zip Code: Virginia, 23692. Telephone Number: (757) 909-0490. E-mail Address: stsnow@comcast.net.

## II. THE ANSWER AND DEFENSES TO THE COMPLAINT

### A. Answering the Claims for Relief

As directed by form Pro Se 3, Marine1 answers the allegations of the Complaint in numbered paragraphs corresponding to each numbered paragraph of the Complaint, stating for each whether Marine1 admits the allegations, denies them, lacks sufficient knowledge to admit or deny them, or admits certain allegations while denying the rest, as follows:

In response to the unnumbered introductory paragraph of the Complaint, Marine1 admits only that Plaintiff seeks damages for alleged breaches of a commercial lease and a loan agreement. Marine1 denies that Plaintiff has established that $346,973.78 is due, denies Plaintiff's calculations, and denies that Plaintiff is entitled to the relief requested except to the extent ultimately proven under enforceable contract terms and applicable law.

### Responses to "Parties & Jurisdiction"

1.      Marine1 admits that Oceanetics, Inc. is incorporated under the laws of the Commonwealth of Virginia. Virginia State Corporation Commission records reflect that Oceanetics is the same Virginia corporation originally formed on June 17, 2004 as Truston Technologies, Inc., Virginia Entity ID 06190169; that its legal name changed to Oceanetics, Inc. effective January 9, 2020; and that "Truston" and "Truston, Inc." were registered fictitious names of that corporation effective June 5, 2017. (Ex. C.) Marine1 therefore admits that Truston Technologies, Inc. was a Virginia corporation when the Lease and Loan Agreement were executed and that Oceanetics remained a Virginia corporation when this action was filed. Marine1 lacks

sufficient information to admit or deny Plaintiff's allegation that its principal place of business was in Annapolis, Maryland on June 12, 2026, and therefore denies that allegation.

2. Marine1 admits that it is a limited liability company formed under Michigan law, that it was previously registered to conduct business in Virginia, and that Scott T. Snow is its sole member and manager. Marine1 denies that Mr. Snow was a citizen of Michigan when this action was filed. Before June 12, 2026, Mr. Snow had established and maintained his residence at 300 Dandy Loop Road, Yorktown, Virginia, and intended to remain in Virginia indefinitely. The Michigan address identified in the Complaint was not his domicile when this action was filed. Because a limited liability company has the citizenship of each of its members, Marine1 was a citizen of Virginia when this action was filed.

3. Marine1 denies that complete diversity of citizenship existed when this action was filed on June 12, 2026. Oceanetics was a citizen of Virginia because it was incorporated under Virginia law. Even if Oceanetics also maintained its principal place of business in Maryland, its Virginia incorporation made it a citizen of Virginia for purposes of 28 U.S.C. § 1332. Marine1 was also a citizen of Virginia because its sole member, Scott T. Snow, was domiciled in Virginia on June 12, 2026. Because Plaintiff and Defendant shared Virginia citizenship, complete diversity was absent. Marine1 otherwise admits that the events alleged in the Complaint occurred principally in York County, Virginia.

### Responses to "Background Facts"

4. Paragraph 4 characterizes Plaintiff's claims and states legal conclusions. To the extent a response is required, Marine1 admits that the Complaint concerns a lease and a loan agreement but denies liability.

5. Marine1 admits that it did not make every payment on the original schedule. Marine1 denies that Plaintiff has established the operative balance, the enforceable consequences of any missed payment, or the damages, interest, fees, and costs alleged, and demands a complete accounting.

**Responses to "The Business Property Lease Agreement"**

6.      Marine1 admits that on or about December 23, 2017, Marine1 and Truston, Inc. entered into a written Business Property Lease Agreement concerning 117 Shirley Road, Seaford, Virginia 23696. The Lease speaks for itself, and any allegation inconsistent with its terms is denied.

7.      Admitted that the Lease provided for an initial term beginning February 15, 2018 and ending February 14, 2019.

8.      Admitted that the Lease provided for automatic yearly renewal unless either party gave written notice sixty (60) days before expiration of the existing term.

9.      Admitted that the stated monthly rent was $5,000, payable on the fifteenth day of each month. Marine1 further states that the Lease provided that the first month of occupancy would be free and that payments would begin March 15, 2018.

10.      Marine1 admits that the Lease states that a $200 late fee "shall be paid with each payment received after the 25th of each month." Marine1 denies any broader interpretation, including that the clause automatically imposes a separate fee for a month in which no payment was received.

11.      Marine1 admits that Paragraph 8 of the Lease required Marine1 to pay utility suppliers directly. Marine1 denies that the Lease, by itself, required utility payments to Oceanetics, and denies that Oceanetics may recover utility reimbursements without proving that it paid the suppliers, that reimbursement was agreed, and that the amounts claimed are accurate and timely.

12.      Admitted.

13.      Marine1 admits that it did not make every monthly rent payment on the original schedule. Marine1 lacks sufficient information to admit Plaintiff's allegation concerning the last payment credited, because Plaintiff has not provided a complete ledger showing all invoices, payments, credits, and adjustments. The allegation is otherwise denied.

Page 4 of 22

14.     Marine1 admits that neither party delivered a written termination notice before October 2025 and that Marine1 conducted business at the premises. Marine1 denies the remaining allegations, including any implication that its occupancy ended in October 2025.

15.     Marine1 admits that Oceanetics transmitted a document dated October 20, 2025, titled "Notice of Termination and Demand to Vacate with Surrender Agreement." The document speaks for itself. Marine1 notes that it refers to a lease dated February 16, 2017 rather than the December 23, 2017 Lease attached to the Complaint, and Marine1 did not sign the proposed Surrender Agreement. The remaining allegations are denied.

16.     Denied. Plaintiff has not established the amount of unpaid rent and has not supplied a complete accounting.

17.     Denied. Plaintiff has not supplied an itemized ledger identifying the payment, due date, receipt date, and contractual basis for each of the sixty-seven late fees claimed.

18.     Denied as stated. Marine1 admits that it was responsible for paying utility suppliers directly under the Lease. Marine1 denies owing Oceanetics $22,068.42 and demands proof of each supplier charge, payment by Oceanetics, any agreed reimbursement term, all credits, and the applicable limitations period.

19.     Marine1 admits that it vacated the Property on or about January 16, 2026. The allegation that Marine1 vacated in November 2025 is denied.

20.     Denied. Plaintiff has not established the alleged lease balance or its component amounts.

21.     Paragraph 21 states a legal conclusion. The Lease speaks for itself. Marine1 denies that Oceanetics is entitled to fees or costs beyond amounts authorized by enforceable contract terms and proven reasonable.

### Responses to "The Loan Agreement"

22.     Marine1 admits that it and Truston executed a written Loan Agreement. Plaintiff attached a copy stating an effective date of December 5, 2018. Marine1 possesses another fully

Page 5 of 22

executed copy stating that it was made and effective December 20, 2018. (Ex. E.) Marine1 denies any allegation that assumes the dates or terms of one version without resolving that discrepancy.

23.     Admitted that the stated principal amount was $90,000.

24.     Admitted that the Loan Agreement states a fixed annual interest rate of 0.2 percent.

25.     Admitted that the Loan Agreement provides for sixty monthly installments of $1,507.64 after a ninety-day payment deferral period. The Agreement otherwise speaks for itself, including its statement that repayment would occur within sixty-four months.

26.     Admitted that the first installment was due after the ninety-day deferral period and later installments were due monthly.

27.     Admitted that the Loan Agreement provides for a late charge of ten percent of an installment not paid within thirty days of its due date, not to exceed $500 for any such late installment.

28.     Marine1 admits that it did not make every loan installment on the original schedule. Marine1 lacks sufficient information to admit Plaintiff's allegation concerning the last payment credited, because Plaintiff has not provided a complete loan ledger. The allegation is otherwise denied.

29.     Denied as stated. Plaintiff has not supplied a complete accounting of payments, credits, interest, and charges.

30.     Denied. Plaintiff has not established the alleged principal, interest, or late-charge balance.

31.     Marine1 admits that Section 6 of the Loan Agreement identified the M/V Warrior Princess as collateral and provided remedies upon default. The Agreement speaks for itself, and any allegation inconsistent with its terms is denied.

32.     Denied. Plaintiff has not established that $61,505.36 is due.

33.     Marine1 admits the stated 0.2 percent annual rate and denies Plaintiff's balance and interest calculation.

34. Paragraph 34 states a legal conclusion. Marine1 admits only that Section 9 of the Loan Agreement refers to an attorney's fee of five percent of the unpaid balance if the note is placed with an attorney for collection. Marine1 denies entitlement to any greater or unsupported amount.

### Responses to Count I — Breach of Business Property Lease Agreement

35. Marine1 incorporates its responses to Paragraphs 1 through 34.

36. Marine1 admits that it and Truston executed the Lease. Marine1 denies that Plaintiff has established an enforceable right to the amounts claimed.

37. Marine1 admits that it did not make every payment on the original schedule, but denies Plaintiff's characterization, calculation, and entitlement to the amounts claimed. Marine1 further states that the Lessor failed to perform material obligations under the Lease, including its express responsibility for necessary roof and structural maintenance.

38. Marine1 admits that Oceanetics transmitted the October 20, 2025 notice. Marine1 denies that the notice establishes the alleged breach or amount.

39. Admitted that Marine1 vacated the premises. Marine1 states that it vacated on or about January 16, 2026.

40. Denied. Marine1 denies owing $285,468.42 and denies the component amounts, interest, fees, and costs claimed.

### Responses to Count II — Breach of Loan Agreement

41. Marine1 incorporates its responses to Paragraphs 1 through 40.

42. Marine1 admits that it and Truston executed a written Loan Agreement. Marine1 denies that Plaintiff has established an enforceable right to the amount claimed.

43. Denied as stated. Marine1 admits that it did not make every installment on the original schedule but denies Plaintiff's characterization and amount.

44. Denied as stated.

45.     Marine1 admits that Oceanetics transmitted a document dated October 21, 2025, titled "Notice of Default — Demand for Payment — and Voluntary Surrender & Security Release Agreement." (Ex. H.) Marine1 did not sign the proposed surrender and release provisions. The remaining allegations are denied.

46.     Denied as stated. Marine1 denies that Plaintiff has established a default in the amounts alleged.

47.     Denied as stated.

48.     Denied. Marine1 denies owing $61,505.36 and demands a complete accounting. Plaintiff must also account for any disposition proceeds, accepted collateral, credits, payments, and contractual limitations on interest and fees.

### Response to the Prayer for Relief

The Prayer for Relief states requests to which no response is required. To the extent a response is required, Marine1 denies that Plaintiff is entitled to judgment, the amounts claimed, attorney's fees, costs, expenses, or any other relief except as may be proven under enforceable contract terms and applicable law.

### B. DEFENSES TO THE CLAIMS FOR RELIEF (FED. R. CIV. P. 12(b))

Pursuant to Section II.B of form Pro Se 3, Marine1 identifies the following defenses to the claims for relief. The First Defense corresponds to item B.1 of the form (lack of subject-matter jurisdiction); the Fourteenth Defense, pleaded in the alternative, corresponds to item B.6 (failure to state a claim upon which relief can be granted). Without assuming any burden of proof that properly rests with Plaintiff, Marine1 asserts the following defense, followed in Section C by its affirmative defenses:

### FIRST DEFENSE

*(Lack of Subject-Matter Jurisdiction — No Diversity of Citizenship)*

The Court lacks diversity jurisdiction under 28 U.S.C. § 1332 because complete diversity was absent when this action was filed. Oceanetics was a citizen of Virginia when this action was commenced — as Plaintiff itself alleges in its own Complaint, which states that Oceanetics "is a corporation organized and existing under the laws of Virginia." (Compl. ¶ 1.) Virginia State Corporation Commission records confirm the same: Oceanetics is a Virginia corporation originally formed on June 17, 2004 as Truston Technologies, Inc., Virginia Entity ID 06190169, and renamed Oceanetics, Inc. effective January 9, 2020. (Ex. C.) Plaintiff's own federal registration confirms it as well: Oceanetics' active SAM.gov record lists "Virginia, United States" as its State of Incorporation. (Ex. D.) The corporation's alleged principal place of business or principal office in Maryland does not eliminate its Virginia citizenship arising from its Virginia incorporation. See 28 U.S.C. § 1332(c)(1). Marine1 is a limited liability company and possesses the citizenship of each of its members. Americold Realty Trust v. ConAgra Foods, Inc., 577 U.S. 378, 381–82 (2016); Gen. Tech. Applications, Inc. v. Exro Ltda, 388 F.3d 114, 121 (4th Cir. 2004). Scott T. Snow was Marine1's sole member and was domiciled in Virginia when the Complaint was filed on June 12, 2026 — he had established and maintained his residence in Yorktown, Virginia, and intended to remain in Virginia indefinitely; citizenship for diversity purposes is determined by domicile, meaning physical presence and intent to remain, as of the date the action was filed. See Johnson v. Advance America, 549 F.3d 932, 937 n.2 (4th Cir. 2008). Marine1 was therefore a Virginia citizen. Because Oceanetics and Marine1 shared Virginia citizenship, complete diversity was absent, jurisdiction does not exist under 28 U.S.C. § 1332, and the action should be dismissed under Rules 12(b)(1) and 12(h)(3). Consistent with that disposition, the parties' own Non-Disclosure Agreement (¶ 10) (Ex. B) expressly contemplates the forum for their disputes "if federal jurisdiction does not exist": the York County Poquoson Circuit Court in Yorktown, Virginia.

## C. AFFIRMATIVE DEFENSES TO THE CLAIMS FOR RELIEF

Pursuant to Section II.C of form Pro Se 3, Marine1 identifies the following affirmative defenses and avoidances, including defenses of statute of limitations, payment, estoppel, waiver, and failure of consideration as listed on the form, together with others that apply:

### SECOND DEFENSE

### *(Failure to Establish Enforceable Obligations and Damages)*

Plaintiff bears the burden to prove the operative agreements, its own performance, Marine1's breach, causation, and recoverable damages. Plaintiff has not supplied a complete itemized ledger supporting the rent, utilities, interest, late fees, loan balance, credits, or attorney's fees claimed. Particular components also lack an alleged contractual basis, including utility reimbursements allegedly payable to Plaintiff rather than directly to suppliers.

### THIRD DEFENSE

### *(Statute of Limitations — Partial)*

Virginia Code § 8.01-246(2) imposes a five-year limitations period on written-contract claims. Plaintiff filed this action on June 12, 2026. To the extent a separate cause of action accrued for any installment, utility charge, reimbursement, late fee, or other amount before June 12, 2021, that component is barred unless Plaintiff proves a legally sufficient basis for a later accrual date, acceleration, tolling, or revival. No revival appears: under Virginia Code § 8.01-232(A), an unwritten promise not to plead the statute of limitations is void, and Marine1 has signed no writing reviving any time-barred amount — the signature blocks on the instruments Plaintiff transmitted in October 2025 remain blank. (Ex. H.) On the face of the Complaint and its exhibits, this bar reaches at least: all utility charges that became due before June 12, 2021, including the entirety of the $8,699.25 that Plaintiff itself invoiced in October and November 2019 for utilities from March 2018 through October 2019 (Ex. F); and all late fees and late charges that accrued before June 12,

2021, including the excess lease late fees described in the Sixth Defense. This defense is asserted as a partial defense and does not assume that every component accrued on the same date.

## FOURTH DEFENSE

### *(Payment, Credits, Agreed Deferrals, and Accounting)*

Plaintiff's recovery is barred or reduced by payments, credits, adjustments, and agreed deferrals that have not been fully reflected in the Complaint. Plaintiff's own accounts-payable administrator transmitted an invoice and account "summary to date" to Marine1 on June 24, 2024, and wrote on June 25, 2024 that "the term on the loan ended in February along with fees – attached is the real balance"; that correspondence is in Marine1's possession and will be produced. Plaintiff's loan figures also require reconciliation: the Loan Agreement's sixty installments of $1,507.64 total $90,458.40, and if, as the payment schedule contemplates, installments were paid from the first due date through May 2021 (Compl. ¶ 28), then thirty-three installments totaling $49,752.12 remained unpaid — not the $52,309.00 Plaintiff claims — an unexplained difference of $2,556.88. Plaintiff must produce a transaction-level accounting showing every charge, payment, credit, interest calculation, late fee, and balance.

## FIFTH DEFENSE

### *(Collateral Accounting and Secured-Party Obligations)*

The Loan Agreement identifies the M/V Warrior Princess as collateral — a pledge Plaintiff's own October 21, 2025 Notice of Default expressly acknowledges. (Ex. H.) The vessel remained at the Property when Marine1 vacated in January 2026. Marine1 does not contend that the vessel's mere presence at the Property automatically satisfied the debt. To the extent Plaintiff has taken possession or control of the vessel, however, Plaintiff must comply with the duties applicable to a secured party in possession or control, must proceed in a commercially reasonable manner, and must account for and credit any proceeds from disposition, any legally effective

Page 11 of 22

acceptance of the collateral in full or partial satisfaction, and any other credit required by the Loan Agreement or Title 8.9A of the Code of Virginia. See Va. Code §§ 8.9A-607, 8.9A-610, 8.9A-615, 8.9A-620. A marine survey performed by R. Earl Joyner of Lighthouse Marine Surveying & Consulting, Inc., dated August 21, 2017, appraised the vessel at a fair market value of $180,000.00 — approximately three times the amount Plaintiff claims under Count II; the vessel's present condition and disposition are matters for accounting and discovery. Plaintiff may pursue cumulative remedies but is not entitled to more than one satisfaction of the same obligation.

## SIXTH DEFENSE

### *(Unauthorized or Unitemized Late Charges; Penalty in the Alternative)*

The claimed late fees and late charges must be denied or reduced unless Plaintiff proves that each charge was authorized, correctly calculated, timely, and not duplicative. The Lease applies a $200.00 fee to "each payment received after the 25th of each month"; Plaintiff claims sixty-seven fees ($13,400.00) while alleging only fifty months of unpaid rent, and provides no itemization. Sixty-seven fees cannot be attributed to fifty months; the excess seventeen fees can only relate to payments received during the period before September 2021, when Plaintiff admits rent was still being paid (Compl. ¶ 13), and each such fee that accrued before June 12, 2021 is time-barred (Third Defense). The $9,196.36 in claimed loan late charges likewise cannot be tested without a ledger: at ten percent of each $1,507.64 installment ($150.76), that figure corresponds to sixty-one late charges — more charges than the sixty installments the Loan Agreement contained in its entire term — and if the figure instead reflects recurring charges subject to the $500.00 per-installment cap, Plaintiff has pleaded no itemization from which the computation can be verified. No late fee or late charge may be assessed for any period in which Plaintiff agreed that payment could be deferred, as it did in writing in October 2019. (Ex. F; Seventh Defense.) In the alternative, to the extent a late-charge provision fixes damages for breach, it is unenforceable as a penalty if the anticipated damages were capable of definite measurement when the parties contracted or if the

fixed amount is grossly in excess of, or out of all proportion to, the probable loss. O'Brian v. Langley School, 256 Va. 547, 507 S.E.2d 363 (1998).

## SEVENTH DEFENSE

### *(Utility Charges Not Established as Owing to Plaintiff)*

Paragraph 8 of the Lease required Marine1 to pay utility suppliers directly. Plaintiff must prove that it actually paid each supplier charge for which reimbursement is sought, that Marine1 agreed to reimburse Plaintiff on the asserted terms, that all payments and credits were applied, and that each charge is timely. Utility reimbursements cannot automatically be treated as rent or subjected to lease late fees without a contractual basis. The parties' actual course of dealing is documented in Plaintiff's own correspondence and invoices (Ex. F): Truston did not bill Marine1 for utilities as they accrued, but intermittently and substantially in arrears — on October 11, 2019, Truston's Admin & Facility Security Officer transmitted a single invoice covering approximately nineteen months of utilities (March 2018 through September 2019, totaling $8,217.77), and on October 15, 2019, she confirmed the approval of Truston co-proprietor Matthew Marcy that Marine1 "can make this utilities payment following receipt of your next contract milestone payment from the Government." On November 18, 2019, Truston transmitted an invoice for October 2019 utilities ($481.48). (Ex. F.) Utility reimbursements were accordingly payable, if at all, on the flexible, receipts-contingent schedule the parties themselves established — not as rent and not subject to late fees — and all utility charges that became due before June 12, 2021 are in any event time-barred. (Third Defense.)

## EIGHTH DEFENSE

### *(Waiver, Modification, and Estoppel by Specific Course of Dealing)*

To the extent Plaintiff expressly agreed to defer particular payments, accepted modified payment timing, or represented that payment could await specified contract receipts, Plaintiff

waived strict compliance with the original timing for those amounts and is estopped from imposing inconsistent charges for the agreed deferral periods. This defense is limited to specific agreements and reliance that Marine1 can prove — including the October 2019 written deferral (Ex. F) — and is not based merely on Plaintiff's delay in filing suit. Plaintiff also continued and expanded the parties' business relationship with knowledge of the account balances it now sues upon, entering into the Teaming Agreement (TQ-F-207) and Non-Disclosure Agreement (TQ-F-113) with Marine1 on July 18, 2024 (Exs. A, B), and its President, Eric Jacobs, acknowledged the parties' course of conduct in writing on April 7, 2026: "we have exhausted years of Good Faith with you including loans, a lease, and tolerating hundreds of thousands of dollars owed." (Ex. G.)

## NINTH DEFENSE

### *(Failure to Mitigate After Termination or Surrender)*

After terminating the Lease, recovering control of the premises, or accepting surrender, Plaintiff was required to take reasonable steps to avoid unnecessary additional loss. Any recovery must be reduced by damages that reasonably could have been avoided and by rent or other value received from later use or re-letting of the Property, and by any value realized from the loan collateral. (Fifth Defense.)

## TENTH DEFENSE

### *(Prior Material Breach; Partial Failure of Consideration; Recoupment — Roof and Premises)*

The Lease made the Lessor responsible for necessary roof and structural maintenance (Lease ¶ 11) and excepts the roof from the Lessor's disclaimer of liability for damage caused by leakage (Lease ¶ 12). In 2018, at the outset of the tenancy, the Lessor acknowledged the roof needed repair and obtained estimates from local contractors, yet it never repaired the roof at any time during the tenancy, despite Marine1's communications regarding its condition. The leakage was substantial, unhealthy, and damaging: rainwater intruded through the roof such that buckets

Page 14 of 22

positioned above the offices had to be emptied daily when it rained, and the premises suffered rodent and other animal infestation. These conditions materially impaired Marine1's use of the premises and damaged Marine1's property, and they are documented in photographs that are preserved and will be produced. Under Virginia law, a party who commits the first material breach of a contract is not entitled to enforce the contract. Horton v. Horton, 254 Va. 111, 115–16, 487 S.E.2d 200, 203–04 (1997). To the extent Plaintiff's breach was prior and material — going to the root of the Lease transaction — it bars enforcement of the obligations dependent on that performance; otherwise, it reduces any recovery through recoupment and abatement, including for the damage to Marine1's property caused by Plaintiff's failure to maintain the premises, which Marine1 asserts defensively as arising from the same transaction.

## ELEVENTH DEFENSE

### *(Rent Abatement and Recoupment for Lessor's Use of Leased Space)*

The Lease records on its face that the rent concession for the first month of occupancy and the waiver of any security deposit were agreed "in exchange for Lessee accommodating temporary storage of Lessor equipment and goods on the Property." That storage was not temporary: Oceanetics continued to occupy and use substantial portions of the leased Property, including Building 3, for extended periods — approximately seven of the eight years of the tenancy — while Marine1 paid rent on the entire Property, and the Lessor's equipment remained in Building 3 through Marine1's January 2026 move-out, as documented in photographs that are preserved and will be produced. Federal registration records corroborate Plaintiff's continuing presence at the Property: Plaintiff's active SAM.gov federal registration (CAGE Code 4ZBU1, Unique Entity ID ZK69GHTNHKP7) lists Oceanetics, Inc.'s physical address as 117 Shirley Road, Seaford, Virginia 23696 — the very premises for which it charged Marine1 full rent — and records Virginia as its state of incorporation and June 17, 2004 as its entity start date. (Ex. D.) To the extent Plaintiff charged full rent while retaining and using leased space beyond the agreed temporary arrangement,

any recoverable rent must be reduced by the value of the space and periods Plaintiff occupied, which Marine1 asserts defensively through abatement and recoupment.

## TWELFTH DEFENSE

### *(Contractual Limits on Interest, Fees, and Recovery)*

Any recovery is limited by the written agreements and applicable law. Lease Paragraph 7 authorizes the cost of collection and a reasonable attorney's fee only on rental collected by suit or by an attorney after it is past due; it does not facially authorize all litigation expenses or attorney's fees on every disputed utility charge, late fee, or other component. Loan Agreement Section 9 limits the contractual attorney's fee to five percent of the unpaid balance if the note is placed with an attorney for collection. The Loan Agreement states a fixed annual interest rate of 0.2 percent. Any prejudgment interest must be authorized and calculated under the operative contract and Virginia law; post-judgment interest is governed by applicable federal law.

## THIRTEENTH DEFENSE

### *(Unenforceability of the Proposed Surrender and Release Instrument)*

To the extent Plaintiff relies upon the "Voluntary Surrender & Security Release Agreement" contained in its October 21, 2025 Notice of Default, that instrument is unenforceable and of no effect. By its terms, it demanded that Marine1 waive "any right to notice of disposition, right of redemption, right to surplus proceeds, or any other right arising under Article 9 of the Uniform Commercial Code or otherwise," and release the Lender from claims arising from the Loan Agreement, the vessel, or its disposition. Such debtor rights and secured-transaction protections may not be waived under Virginia Code § 8.9A-602. Moreover, Marine1 never executed the instrument: the Borrower signature blocks on the instrument as Plaintiff transmitted it remain blank. (Ex. H.)

## FOURTEENTH DEFENSE

### *(Teaming Agreement Supersession — Pleaded in the Alternative)*

Under Rule 8(d), Marine1 pleads in the alternative that Paragraph 32 of the parties' July 18, 2024 Teaming Agreement (Oceanetics form TQ-F-207) (Ex. A) superseded the contracts sued upon. Paragraph 32, titled "All Other Contracts Superseded," provides in full: "This Agreement shall supersede and replace any and all prior agreements and contracts of any kind between the parties hereto (including any predecessor and related entities)." Virginia State Corporation Commission records identify Oceanetics, Inc. as Entity ID 06190169, formerly named Truston Technologies, Inc., with "TRUSTON" and "TRUSTON, INC." as its registered fictitious names effective June 5, 2017 (Ex. C); the Lease (December 23, 2017) and the Loan Agreement (effective December 5 or December 20, 2018) therefore predate the Teaming Agreement (effective July 18, 2024) and involved the same corporation under its Truston names, making both instruments sued upon prior contracts "between the parties hereto" within Paragraph 32. The Commission's records confirm that Truston Technologies, Inc. and Oceanetics, Inc. are not separate corporations: they are the same Virginia corporation, Entity ID 06190169, originally formed in Virginia in 2004, which entered the Lease and Loan Agreement under its Truston names and later entered the Teaming Agreement under the Oceanetics name. Accordingly, the Lease, the Loan Agreement, and the Teaming Agreement all involved Marine1 and the same corporate party. Under Virginia law, contract language is given its plain meaning, and a contract is ambiguous only if reasonably susceptible of more than one construction. TravCo Ins. Co. v. Ward, 284 Va. 547, 552 (2012); Berry v. Klinger, 225 Va. 201, 208 (1983). Paragraph 32 is separate from, and broader than, the Teaming Agreement's subject-matter merger clause (¶ 27) and must be given independent meaning; the parties' contemporaneous Non-Disclosure Agreement contains a supersession clause expressly limited to "the subject Proprietary Information" (NDA ¶ 15) (Ex. B), demonstrating that the drafter knew how to write a narrow clause when it intended one, and as drafter of the form Oceanetics bears the consequences of any ambiguity in its language. Plaintiff's own President has

Page 17 of 22

likewise insisted in writing that the Teaming Agreement's text controls: his April 7, 2026 email construes the Agreement provision by provision and dismisses Marine1's contrary understanding as having "no contractual basis." (Ex. G.) Marine1 recognizes that Plaintiff may rely on Paragraph 27's subject-matter language and that the Teaming Agreement must be read as a whole; Marine1 asserts supersession only as an alternative defense and does not represent that the issue is settled as a matter of law. To the extent Paragraph 32 superseded and replaced the Lease and the Loan Agreement, Counts I and II fail to state a claim upon which relief can be granted.

<u>REQUEST REGARDING COUNSEL AND AMENDMENT</u>

Marine1 has not included counterclaims in this emergency protective filing. Marine1 respectfully requests that the Court grant the forty-five-day extension requested in ECF No. 10, through and including September 11, 2026, so licensed counsel may appear and amend this pleading as permitted by Federal Rule of Civil Procedure 15, including to address any counterclaims permitted or required by Rule 13. This request is not intended to enlarge either Rule or to preserve a claim that the Rules would otherwise bar. Marine1 further reserves, to the fullest extent the Rules allow, its claims against Oceanetics arising from the parties' dealings, including claims relating to the Teaming Agreement, the Non-Disclosure Agreement, proprietary information, and amounts owed to Marine1, for assertion through counsel.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Defendant Marine1, LLC respectfully requests that the Court: (a) rule promptly on Marine1's pending Motion for Extension of Time to Respond to the Complaint (ECF No. 10), extend Marine1's response deadline through and including September 11, 2026 as requested in that motion, accept this Answer provisionally so that no default is entered, and permit licensed counsel, upon appearing, to amend this Answer as allowed by the Federal Rules of Civil Procedure; (b) dismiss the Complaint for lack of subject-matter jurisdiction; (c) in the alternative, and only if and when the merits are reached, deny all relief requested in the Complaint and enter

judgment in Marine1's favor on Counts I and II; (d) reduce any amount found to be owing by all time-barred sums, unreflected payments and credits, all credits required by law with respect to the loan collateral, and all abatements, setoffs, and recoupments; (e) award Marine1 its costs; and (f) grant such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Defendant Marine1, LLC demands a trial by jury on all issues so triable.

## LIST OF EXHIBITS

Exhibit A — Teaming Agreement, Oceanetics form TQ-F-207, effective July 18, 2024, fully executed (9 pages), including ¶ 27 (Entire Agreement), ¶ 30 (Governing Law), and ¶ 32 (All Other Contracts Superseded).

Exhibit B — Non-Disclosure Agreement, Oceanetics form TQ-F-113, dated July 18, 2024, fully executed (7 pages), including ¶ 10 (Governing Law; jurisdiction and venue, including the York County Poquoson Circuit Court "if federal jurisdiction does not exist") and ¶ 15 (limited supersession clause).

Exhibit C — Virginia State Corporation Commission, Clerk's Information System records for Oceanetics, Inc., Entity ID 06190169, captured July 27, 2026: Entity Information (including officers); Name History (formation June 17, 2004 as Truston Technologies, Inc.; legal name Oceanetics, Inc. effective January 9, 2020; fictitious names including "TRUSTON, INC. (YORK CO)" and "TRUSTON (YORK CO)" effective June 5, 2017); and Registered Agent History.

Exhibit D — SAM.gov federal registration record for Oceanetics, Inc., CAGE Code 4ZBU1, Unique Entity ID ZK69GHTNHKP7, captured July 28, 2026, listing the entity's physical address as 117 Shirley Road, Seaford, Virginia 23696, its state of incorporation as Virginia, and its entity start date as June 17, 2004 (6 pages).

Exhibit E — Loan Agreement between Truston and Marine1, LLC, fully executed, made and effective December 20, 2018 (2 pages).

Exhibit F — Utilities correspondence and invoices: email thread of October 11 – November 18, 2019 between Truston's Admin & Facility Security Officer Breah Rockwell and Scott T. Snow (including the October 15, 2019 confirmation that Marine1 "can make this utilities payment following receipt of your next contract milestone payment from the Government"); Truston invoice for utilities March 2018 – September 2019 ($8,217.77), with transaction detail; and Truston invoice for October 2019 utilities ($481.48), with transaction detail.

Exhibit G — Email of Eric Jacobs, President of Oceanetics, to Scott T. Snow dated April 7, 2026 ("Moving Forward"), with Marine1's April 9, 2026 response (5 pages).

Exhibit H — Plaintiff's "Notice of Default — Demand for Payment — and Voluntary Surrender & Security Release Agreement," dated October 21, 2025, as transmitted to Marine1, with the Borrower signature blocks blank (3 pages).

## III. CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this answer: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the answer otherwise complies with the requirements of Rule 11.

Consistent with Section II.D of form Pro Se 3, Marine1 asserts no counterclaim or cross-claim in this Answer; as stated in the Reservation of Defenses and Claims above, Marine1 expressly reserves its claims for assertion through counsel.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: July 28, 2026

Respectfully submitted,

**MARINE1, LLC**

By: _____

Scott T. Snow (Printed Name)
Its Owner and Sole Member
300 Dandy Loop Road
Yorktown, Virginia 23692
(757) 909-0490
stsnow@comcast.net

Page 21 of 22

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2026, I caused a true and correct copy of the foregoing

Answer and Affirmative Defenses to be served upon Plaintiff's counsel of record by United Parcel

Service (UPS), delivery prepaid, UPS Tracking No. 1ZL7T 79C 29 1747 3050, and by courtesy

email to jchapman@cwm-law.com and lbarkley@cwm-law.com, addressed as follows:

James L. Chapman IV, Esq.
Lawson P. Barkley, Esq.
Crenshaw, Ware & Martin, P.L.C.
150 West Main Street, Suite 1923
Norfolk, Virginia 23510

UPS Tracking No.: 1ZL7T 79C 29 1747 3050

Scott T. Snow, for Marine1, LLC

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA — Newport News Division**

Oceanetics, Inc. v. Marine1, LLC — Civil Action No. 4:26-cv-00090-MSD-DEM

## GHOSTWRITING CERTIFICATION

Pursuant to the requirements of this Court applicable to self-represented litigants, I declare under

penalty of perjury that no attorney has prepared, or assisted in the preparation of, the

accompanying document: The Defendant's Answer to the Complaint with Exhibits A–H.

Scott T. Snow, for Defendant Marine1, LLC

Dated: July 28, 2026

# EXHIBIT A

*Teaming Agreement TQ-F-207 (effective July 18, 2024)*

Oceanetics, Inc. v. Marine1, LLC, No. 4:26-cv-00090 (E.D. Va.)

| Document # | Title | OCEANETICS |
|---|---|---|
| TQ-F-207 | Teaming Agreement | |

This Teaming Agreement, including all Exhibits attached hereto or referenced herein (hereinafter referred to as "Agreement"), is made and entered into this 18th day of July, 2024, by and between Oceanetics, Inc., (OCEANETICS) having a place of business at 520 Ridgely Ave., Annapolis, MD 21401, and [Marine1 LLC, (MARINE1)], having a place of business at 117 Shirley Rd, Seaford, VA 23696.

OCEANETICS and MARINE1 are sometimes referred to collectively herein as the "Parties" and individually as a "Party."

WHEREAS, Parties intend to pursue contracts (solicitated or otherwise) to sell ACTIVE RIDE CONTROL SYSTEMS (ARC(S)) to "CUSTOMER" as defined in Exhibit B hereafter referred to as "PROJECT."

WHEREAS, each of the Parties have determined that it and the CUSTOMER would benefit from a team arrangement in order to develop the optimal approach to responding to the PROJECT, and because such an arrangement complements each Party's unique capabilities and fills voids in each Party's technical, business and production capabilities, the Parties recognize the efficiency of teaming together and therefore wish to team together for the purpose of competitively responding to the PROJECT and obtaining contract(s) resulting therefrom;

WHEREAS, the Parties wish to establish a team arrangement in the form of a prime contractor/subcontractor relationship pursuant to which OCEANETICS will act as the prime contractor (PRIME) on behalf of the team, and MARINE1 will act as a subcontractor (SUB);

WHEREAS, the Parties wish to enter into this Agreement to set forth more fully the terms and conditions pursuant to which the Parties will, as a team, respond to the PROJECT and obtain any contract(s) resulting therefrom, and the Parties have agreed to the respective responsibilities of work to be performed by the PRIME and SUB on the PROJECT, as set forth in the Statement of Work attached hereto as Exhibit A; and

WHEREAS, the ability of the Parties to competitively respond to the PROJECT and to obtain contracts resulting therefrom will necessitate the disclosure by each Party to the other of its Proprietary Information, and the Parties are willing to make their Proprietary Information available to the other Party for the limited purpose of competitively responding to the PROJECT and obtaining contract(s) resulting therefrom, and each of the Parties is willing to accept the Proprietary Information from the other Party in confidence for use solely and exclusively in connection with competitively responding to the PROJECT and obtaining contract(s) resulting therefrom, in accordance with the terms and conditions of this Agreement and the Non-Disclosure Agreement dated July 18, 2024 that the Parties have entered into.

NOW, THEREFORE, in consideration of the foregoing, and in reliance on the mutual promises and obligations contained herein, the Parties hereby agree as follows:

1. Definitions. The terms set forth herein are defined as follows:

    a. "The Procurement" means the entire process pursuant to which the CUSTOMER selects and processes, whether by purchase, lease, or any other means, the acquisition of the goods and/or services described in the PROJECT, including but not limited to any and all pre-proposal activity, the submission of proposals, the conduct of benchmarks (if any), negotiations, clarifications and/or discussions (if any) with respect to any contracts resulting therefrom, and the award of any such contracts;

    b. "Order" means any contractual instrument utilized by any CUSTOMER for the delivery of goods and services described in the PROJECT from the PRIME; and

    c. "Proposal" means any submission of technical and/or pricing information regarding ARC SYSTEMS delivered to CUSTOMER in pursuit of an Order; and

| Rev Date:<br>07-___-2024 | This document is for reference only in print form. Refer to the Approved Documents folder on the Team Site for current version. | Page 1 of 9 |
|---|---|---|

| Document #<br>TQ-F-207 | Title<br>Teaming Agreement | OCEANETICS |
|---|---|---|

d. "Proprietary Information" shall have the same meaning as set forth in any separate Non-Disclosure Agreement between the parties; and

e. "PROJECT" shall mean the PROJECT described in the third paragraph of page one (1) of this Agreement.

2. Parties' Responsibilities. Each Party will work with the other in good faith with the objective of developing a proposal or proposals which will cause the selection of the PRIME as a prime contractor for the Procurement and the approval by the CUSTOMER of the SUB as the subcontractor for the work assigned to the SUB herein, and each Party shall continue to exert reasonable, good faith efforts toward this objective throughout any and all negotiations concerning a proposed contract or subcontracts which may follow the submission of such proposal or proposals. This requirement includes the furnishing by SUB of sufficient qualified personnel to assist the PRIME in preparing proposals and related materials. Additional responsibilities of the Parties after Orders are awarded are articulated in Exhibit A.

3. Identification of Parties. It is understood that in proposals submitted for the Procurement, the PRIME will, to the extent it deems necessary and appropriate, identify the SUB as a team member, and describe the relationship and respective areas of responsibility of the Parties.

4. Additional Team Members. Notwithstanding any other provision herein to the contrary, the PRIME reserves the right to add additional team members to the Procurement team to assist in performing tasks and areas of work and responsibility thereunder and take whatever actions it deems reasonably necessary to produce a proposal or proposals that have the greatest likelihood of resulting in the selection of the PRIME as the prime contractor for the Procurement. In the event that additional team members are added, the PRIME agrees to obtain adequate written protection of the SUB's Proprietary Information from any other team member(s).

5. SUB Responsibilities. The SUB will furnish, for incorporation into any proposal, all proposal materials, information and data pertinent to the work assigned to the SUB, including but not limited to, manuscripts, art work, and cost and/or pricing data, as appropriate. Upon request of the PRIME, the SUB shall provide directly to the CUSTOMER, as part of the SUB's cost proposal, completed CUSTOMER cost and pricing forms and certifications with detailed supporting schedules, and any other documents required to be submitted as part of the proposal, in order to permit the CUSTOMER's evaluation of this data. The cost format and work breakdown structure in the SUB's proposal shall be as specified by the PRIME.

6. SUB Personnel. At the PRIME's request, the SUB shall make available appropriate management and technical personnel to assist the PRIME in any discussions, communications or negotiations with the CUSTOMER relating to the Procurement.

7. Costs. Each Party shall bear all costs, expenses, risks and liabilities incurred by it arising out of or relating to its proposal obligations, proposal efforts or proposal performance under this Agreement. Neither Party shall have any right to any reimbursement, payment or compensation of any kind from the other during the term of this Agreement for any proposal activities.

8. Submissions to the CUSTOMER. The PRIME shall have the sole right to decide the form and content of all documents submitted to the CUSTOMER. The PRIME will make reasonable efforts to ensure that the SUB's data is accurately and adequately portrayed and identified as the SUB's portion. The PRIME will afford the SUB the opportunity to review, upon request prior to proposal submission, that portion of the proposal that includes the effort to be performed by the SUB.

9. Subcontract Negotiations. If, during the term of this Agreement, a PRIME contract resulting from the PROJECT is awarded to the PRIME, the Parties will, to the extent permitted by CUSTOMER rules, regulations

| Rev Date:<br>07-___-2024 | This document is for reference only in print form. Refer to the Approved Documents folder on the Team Site for current version. | Page 2 of 9 |
|---|---|---|

| Document # | Title | OCEANETICS |
|---|---|---|
| TQ-F-207 | Teaming Agreement | |

and applicable law, engage in good faith negotiations towards entering into a subcontract ("Subcontract"). The Parties will undertake reasonable efforts to enter into a subcontract for that portion of the work set forth in Exhibit A of this Agreement, as may be modified by both Parties through mutually executed amendments to this Agreement. Such work shall be performed by the SUB in accordance with schedules and technical specifications, if any, and at a price and other terms and conditions to be mutually agreed upon between the Parties at time of proposal submitted in pursuit of any given Order opportunity under the scope of the Procurement. Said terms and conditions shall not conflict with CUSTOMER rules, regulations and applicable law.

10. CUSTOMER Direction. It is understood that the PRIME may be directed by the CUSTOMER to place the work contemplated in Exhibit A as the SUB's responsibility, with another source, or to direct that such work be bid on a competitive basis. In such event, the PRIME may, at its sole discretion, present to the CUSTOMER its grounds for reversal of such direction. The SUB shall, upon request of the PRIME, provide assistance in connection with such presentation. If a reversal cannot reasonably be obtained or if the PRIME chooses not to seek a reversal of the CUSTOMER's decision, then the PRIME shall comply with the CUSTOMER's direction, and under such circumstances, the Parties shall have no further obligations to one another hereunder, except as set forth in the Non-Disclosure dated July 18, 2024 that the Parties have entered into.

11. Reserved.

12. Communications with the CUSTOMER. Although the PRIME is contemplated as the sole interface with the CUSTOMER, it is recognized that the SUB may have continuing relations with the CUSTOMER and may be the recipient of inquiries concerning the Procurement. Therefore, any communications initiated by the CUSTOMER directly with the SUB concerning this Procurement are permissible, provided the PRIME is notified promptly of such communications and the substance thereof, but in no event later than one business day after such communication.

13. Presentations. In the event the PRIME is afforded the opportunity to make presentations, whether orally or in writing, to potential customers concerning the Procurement, the content of such presentations may, at the PRIME's discretion, be made known to the SUB, subject to any prohibitions or restrictions that may be imposed by the CUSTOMER upon such disclosure. The SUB agrees to support such presentations, as may be requested by the PRIME, to the extent such presentations relate to the SUB's area of work as defined in Exhibit A.

14. Public Announcements/Disclosures. Any news release, public announcement, advertisement or other form of publicity released or disclosed by either Party concerning this Agreement or any proposals relating thereto, shall be subject to the prior approval of the PRIME, except that if required or requested by the CUSTOMER, this Agreement and the terms thereof may be made known to the CUSTOMER. Any such public announcement, release or disclosure shall give due credit to the contribution of each Party.

15. Points of Contact. The Parties each will designate one or more individuals within their respective organizations as their representative(s) responsible for directing performance of the Parties' obligations under this Agreement.

16. Proprietary Information. In carrying out the terms of this Agreement, it may be necessary for the Parties to provide proprietary information to one another. In such event, the disclosure and use of all proprietary information shall be in accordance with the Non-Disclosure Agreement dated July 18, 2024 that the Parties have entered into.

| Rev Date: 07-___-2024 | This document is for reference only in print form. Refer to the Approved Documents folder on the Team Site for current version. | Page 3 of 9 |
|---|---|---|

| Document #<br>TQ-F-207 | Title<br>Teaming Agreement | OCEANETICS |
|---|---|---|

17. Inventions/Patents.  Nothing contained in this Agreement shall, by express grant, implication, estoppel or otherwise, create in either Party any right, title, interest, or license in or to the inventions, patents, computer software or software documentation of the other Party.

18. Termination/Expiration.  This Agreement shall remain in effect until the first of the following shall occur:

   a.  A decision by either Party that it does not wish to participate in the Procurement or in any response to the PROJECT, in any manner, provided that such decision is communicated in writing to the other Party at least 30 days prior to the due date of the initial proposal, offer or quote.  In the event of the foregoing, the terminating Party shall be prohibited from responding to the PROJECT or participating in the Procurement, in any manner, either independently or in conjunction with any other Party.

   b.  An official CUSTOMER announcement that the PROJECT has been canceled, or the Procurement or PROJECT is materially or substantially revised and in the good faith opinion of either Party, the team is no longer competitive.

   c.  Upon the award of a prime contract for the PROJECT to a contractor or contractors other than the PRIME.

   d.  The PRIME is unable to obtain CUSTOMER approval of the SUB as a subcontractor to the PRIME, and/or the terms of the subcontract between the PRIME and the SUB cannot reasonably be modified to secure the CUSTOMER's approval of the SUB.

   e.  Six (6) years after the effective date of this Agreement, (the "Initial Term").  The Parties agree that, at the end of the Initial Term, the term of this Agreement shall be automatically extended for an additional two-year (2-year) term (the "Renewed Term") unless either Party gives written notice, no later than ninety (90) calendar days before the end of the Initial Term, of its intention to terminate the Agreement.  The Parties further agree that, at the end of the Renewed Term, the term of this Agreement will continue to be automatically extended for an indefinite number of additional two-year terms (the "Additional Renewed Terms") unless either Party gives written notice, no later than ninety (90) calendar days before the end of any subsequent Additional Renewed Term, of its intention to terminate the Agreement.  Nothing in this Sub-Paragraph 18(e) of the Agreement shall prevent its termination by reason of any other occurrence set forth in this Paragraph 18.

   f.  The suspension or debarment by the CUSTOMER or the U.S. Government of the PRIME or the SUB.

   g.  an occurrence of "Buyout" as defined and described in Paragraph 19.

19. Buyout.  SUB may terminate the Agreement by paying PRIME, in cash (USD), the sum of ONE MILLION FIVE HUNDRED THOUSAND DOLLARS ($1,500,000.00) (the "Buyout"), conditioned by the following: (1) following the Buyout, SUB will be at liberty to independently (without the participation of PRIME) pursue new contracts for the Project; and (2) nonetheless, and despite the Buyout, SUB will remain obligated to perform to completion all of SUB's duties and obligations arising under any Subcontract (as defined and described in Paragraph 9 of this Agreement) the scope of work of which is part of a Project PRIME contract which CUSTOMER declines to either (i) cancel, or (ii) allow PRIME to assign to SUB without further obligation of PRIME.

20. Survival.  The termination or expiration of this Agreement shall not supersede or affect the obligations of the Parties with respect to the protection of Proprietary Information, as set forth in any separate Non-Disclosure Agreement between the Parties, which shall survive such termination or expiration and remain in full force and effect.

| Rev Date:<br>07-___-2024 | This document is for reference only in print form. Refer to the Approved Documents folder on the Team Site for current version. | Page 4 of 9 |
|---|---|---|

| Document #<br>TQ-F-207 | Title<br>Teaming Agreement | OCEANETICS |
|---|---|---|

21. Exclusivity. Since this Agreement, and any proposal, offer or quote prepared or generated in connection therewith, requires the full cooperation of the Parties, both Parties agree that they will not in any manner participate in or undertake efforts that are competitive to this Agreement as it relates to the CUSTOMER as defined in Exhibit B, , independently or in conjunction with any other Party, during the term of this Agreement. The foregoing prohibitions include, but are not limited to, participation in proposal efforts or the interchange of technical data with competitors; provided, however, that the foregoing does not limit or restrict the rights of the Parties in offering to sell or selling to others their standard products and services incidental thereto.

22. Notices. All notices, certificates, acknowledgments or other written communications (hereinafter referred to as "Notices") required to be given under this Agreement shall be in writing and shall be deemed to have been given and properly delivered if duly mailed by certified or registered mail to the other Party at its address as follows, or to such other address as either Party may, by written notice, designate to the other. Additionally, Notices sent by any other means (i.e., facsimile, overnight delivery, courier, and the like) are acceptable subject to written confirmation of both the transmission and receipt of the Notice.

PRIME                                    SUB

Oceanetics                               Marine1, LLC
520 Ridgely Ave                          117 Shirley Rd
Annapolis. MD 21401                      Seaford, VA 23696

Attn: Lesley Levicki                     Attn:   Scott Snow
Phone: 410-571-5186                      Phone: 248-310-2448
Fax: 410-510-1095                        Fax:    _____
E-Mail: llevicki@oceanetics.com          email:  stsnow@comcast.net

23. Relationship of Parties. This Agreement is not intended by the Parties to constitute or create a joint venture, limited liability company, pooling arrangement, partnership, or other formal business organization of any kind, other than a contractor team arrangement as set forth in FAR Part 9.6, and the rights and obligations of the Parties shall be only those expressly set forth herein. Neither Party shall have authority to bind the other except to the extent expressly authorized herein. Nothing in this Agreement shall be construed as providing for the sharing of profits or losses arising out of the efforts of either or both Parties. It is also understood that no division of markets is attempted by this Agreement.

24. Assignment. This Agreement may not be assigned, novated or otherwise transferred by operation of law or otherwise by either Party without the prior written consent of the other Party. Any change of control of a Party shall be deemed an assignment of this Agreement that requires the prior written consent of the other Party. For purposes of this Agreement, "change of control" means any merger, consolidation, sale of all or substantially all of the assets or sale of a substantial block of stock, of a Party. Any such assignment, novation or transfer by one Party not in accordance with this provision shall be a material breach of this Agreement and shall be grounds for immediate termination thereof by the non-breaching Party, in addition to any other remedies that may be available at law or in equity to the non-breaching Party.

25. Modifications/Non-Waiver of Rights. This Agreement shall not be amended, modified or extended, nor shall any waiver of any right hereunder be effective, unless set forth in a document executed by duly authorized representatives of both Parties, specifically referencing the provision of this Agreement to be amended,

| Rev Date:<br>07-___-2024 | This document is for reference only in print form. Refer to the Approved Documents folder on the Team Site for current version. | Page 5 of 9 |
|---|---|---|

| Document # | Title | OCEANETICS |
|---|---|---|
| TQ-F-207 | Teaming Agreement | |

modified, extended or waived. The failure of either Party to insist upon performance of any provision of this Agreement, or to exercise any right, remedy or option provided herein, shall not be construed or deemed as a waiver of the right to assert any of the same at any time thereafter.

26. CUSTOMER's Right to Negotiate.  Nothing herein is intended to affect the rights of the CUSTOMER to negotiate directly with either Party hereto on any basis the CUSTOMER may desire.

27. Entire Agreement. This Agreement, including any and all Exhibits hereto which are incorporated herein by reference, constitutes the entire agreement and understanding between the Parties hereto, and supersedes and replaces any and all previous or contemporaneous understandings, commitments, agreements, proposals or representations of any kind, whether oral or written, relating to the subject matter hereof.

28. Severability. If any term, condition or provision of this Agreement is held or finally determined to be void, invalid, illegal, or unenforceable in any respect, in whole or in part, such term, condition or provision shall be severed from this Agreement, and the remaining terms, conditions and provisions contained herein shall continue in force and effect, and shall in no way be affected, prejudiced or disturbed thereby.

29. Classified/Export Controlled Information. To the extent the obligations of the Parties hereunder involve access to information classified by the U.S. Government as "Confidential" or higher, the provisions of all applicable federal laws, statutes and regulations shall apply to this Agreement. The provisions of all applicable security and export control laws, statutes and regulations shall also apply hereto.

30. Governing Law. This Agreement shall be governed by and construed, enforced and interpreted under the laws of the Commonwealth of Virginia, without regard to its laws relating to conflict or choice of laws. Any dispute, claim, action or suit arising out of or relating to this Agreement may only be brought exclusively in a court of competent jurisdiction in the Commonwealth of Virginia.

31. Headings.  The headings and titles of the various sections of this Agreement are intended solely for convenience of reference and are not intended to define, limit, explain, expand, modify or place any construction on any of the provisions of this Agreement.

32. All Other Contracts Superseded. This Agreement shall supersede and replace any and all prior agreements and contracts of any kind between the parties hereto (including any predecessor and related entities).

IN WITNESS WHEREOF, the Parties represent and warrant that this Agreement is executed by duly authorized representatives of each Party as set forth below on the date first stated above.

Oceanetics, Inc.

Eric C Jacobs:A01094E000001 73C0B37714000288AB
Digitally signed by Eric C Jacobs:A01094E00000173C0B377 14000288AB
Date: 2024.07.25 14:18:54 -05'00'

By:_____

Eric C Jacobs
Title:    President

Marine1 LLC

By:_____

Scott T. Snow
Title: President

| Rev Date: 07-___-2024 | This document is for reference only in print form. Refer to the Approved Documents folder on the Team Site for current version. | Page 6 of 9 |
|---|---|---|

| Document #<br>TQ-F-207 | Title<br>Teaming Agreement | OCEANETICS |
| --- | --- | --- |

EXHIBIT A:  PRIME/SUB WORKSHARE

- SUB will provide enabling technology components and proposal support.
  - Proposal support
    - Technical information
    - Pricing information for SUB portion of work
  - Upon award of subcontract from PRIME to SUB:
    - ARC Engineering
    - Custom RamTabs
    - Pre-assembly and bench test labor
    - Shipping of SUB components to PRIME or CUSTOMER as directed by the PRIME
    - On-going compliance with any information protection requirements flowed-down via required FAR clauses and PRIME directions
    - ARC Installation:
      - Primary on first two installations (executed through Cooperative Work arrangement described below); and
      - Secondary/support after second installation (executed through Cooperative Work arrangement described below on an as-needed basis)
    - ARC Tuning:
      - Primary on first two installations (executed through Cooperative Work arrangement described below); and
      - Secondary support after second installation (executed through Cooperative Work arrangement described below on an as-needed basis)
    - On-going technical support on an as-needed basis (executed through Cooperative Work arrangement described below on an as-needed basis)

- PRIME will provide:
  - Procurement management:
    - Understanding FAR/DFAR requirements
    - Procurement Q&A
    - Overall proposal development and submissions including technical volumes and DCAA compliant cost volumes, if required
    - PRIME contract negotiations with CUSTOMER
  - Upon award of any Prime contract:
    - Overall project management for each CUSTOMER Order from PRIME to include:
      - Primary CUSTOMER interface
      - ARC production schedule and installation coordination
    - Information protection infrastructure for SUB and PRIME requirements of any PRIME contract
    - Procurement of any COTS or other simpler custom components to integrate with SUB proprietary components
    - Shipping of complete ARC system package to customer
    - ARC Installation:
      - Secondary/support on first two installations (executed through Cooperative Work arrangement described below); and
      - Primary after second installation (executed through Cooperative Work arrangement described below on an as-needed basis)
    - ARC Tuning:

| Rev Date:<br>07-___-2024 | This document is for reference only in print form. Refer to the Approved Documents folder on the Team Site for current version. | Page **7** of **9** |
| --- | --- | --- |

| Document #<br>TQ-F-207 | Title<br>Teaming Agreement | OCEANETICS |
| --- | --- | --- |

- Secondary/support on first two installations (executed through Cooperative Work arrangement described below); and
- Primary after second installation (executed through Cooperative Work arrangement described below)
  - On-going technical support on an as-needed basis

- Cooperative Work:  Due to SUB's unique expertise and PRIME's scale to cover items like required insurances, it is agreed that for some specific tasking, SUB's employee, Scott Snow, may be hired by PRIME on a temporary basis to work as project employee supporting work at CUSTOMER's locations. Specific work expected to fall into this category includes:
  - ARC installation support at CUSTOMER's designated work site
  - ARC tuning at CUSTOMER's designated work site or aboard CUSTOMER's vessels
  - It is expected that Scott Snow will train PRIME's regular employees in all aspects of installation and tuning to meet the expected demands of multiple Orders to address all the requirements of the PROJECT
  - This cooperative work allows PRIME to completely satisfy its requirements of any PRIME contract but does not imply or convey any licensing agreement or transfer of any intellectual property from SUB to PRIME

| Rev Date:<br>07-___-2024 | This document is for reference only in print form. Refer to the Approved Documents folder on the<br>Team Site for current version. | Page **8** of **9** |
| --- | --- | --- |

| Document # | Title | OCEANETICS |
|---|---|---|
| TQ-F-207 | Teaming Agreement | |

## EXHIBIT B:  CUSTOMER DEFINITION

Exhibit B is intended to be a living document where new Customers will be added upon approval of both parties. Additional Customers added to a revision of Exhibit B will be considered approved upon the written confirmation of both parties whether it be by signature, electronic signature, or approval via electronic mail. CUSTOMER is defined to include any of the following, any agency procurement organization acting on behalf of the following, and any combination of the following:

- United States Special Operations Commands
- United States Naval Special Warfare Commands
- Commander, Naval Surface Force Atlantic (SURFLANT)
- NAVSEA's PMS300
- Any special purpose vessel supplier to the above; examples include, but are not limited to:
    - United States Marine, Inc. (USMI)
    - Vigor Industrial's Oregon Iron Works

| Rev Date:<br>07-___-2024 | This document is for reference only in print form. Refer to the Approved Documents folder on the Team Site for current version. | Page **9** of **9** |
|---|---|---|

# EXHIBIT B

*Non-Disclosure Agreement TQ-F-113 (July 18, 2024)*

Oceanetics, Inc. v. Marine1, LLC, No. 4:26-cv-00090 (E.D. Va.)

| Document # | Title | OCEANETICS |
|---|---|---|
| TQ-F-113 | NON-DISCLOSURE AGREEMENT | |

## NON-DISCLOSURE AGREEMENT

This Agreement is entered into as of this 18th day of July, 2024, and is made by and between Oceanetics, Inc. (hereinafter called "Oceanetics") having offices at 520 Ridgely Ave., Annapolis, MD 21401, and Marine1 LLC, which has offices at 117 Shirley Rd, Seaford, VA 23696 (hereinafter called "Marine1").

## WITNESSETH:

WHEREAS, Oceanetics and Marine1, believe that it will be mutually beneficial for them to exchange certain proprietary information as described below in connection with and for the purposes described below; and

WHEREAS, the parties believe that it will be mutually beneficial for Oceanetics to disclose to Marine1, certain proprietary information related to RFPs received by Oceanetics; (hereinafter "Oceanetics Proprietary Information") for purposes of allowing Marine1, to (a) evaluate such Oceanetics Proprietary Information, (b) conduct discussions with Oceanetics with respect thereto, and (c) use such Oceanetics Proprietary Information in connection with the  selling of Active Ride Control Systems (ARCs) to U.S. Government customers and their respective special purpose vessel suppliers for vessels under 30 meters in length (hereinafter "Purpose"); but only (i) to the extent expressly permitted in other written agreements between Oceanetics and Marine1,  or pursuant to other written authorization by Oceanetics, (i) in connection with and for purposes of a business relationship with Oceanetics, or (ii) for purposes of submitting bids or proposals to Oceanetics for supply of goods or services and supplying such goods or services to Oceanetics; and

WHEREAS, the parties believe that it will be mutually beneficial for Marine1, to disclose to Oceanetics certain proprietary information related to its ARCs; (hereinafter "Marine1 Proprietary Information") for purposes of allowing Oceanetics to (a) evaluate such Marine 1 Proprietary Information and (b) conduct discussions with Marine1 with respect thereto, and (c) use such Marine1 Proprietary Information in connection with the Purpose; but only (i) to the extent expressly permitted in other written agreements between Oceanetics and Marine1 or pursuant to other written authorization by Marine1, (i) in connection with and for purposes of a business relationship with Oceanetics,  or (ii) for purposes of submitting bids or proposals to Oceanetics,  for supply of goods or services and supplying such goods or services to Oceanetics; and

WHEREAS, Oceanetics Proprietary Information and Marine1 Proprietary Information are hereinafter sometimes singularly and collectively referred to as "Proprietary Information"; and

WHEREAS, the parties desire to establish certain understandings to protect their respective Proprietary Information from unauthorized use or disclosure.

NOW, THEREFORE, in consideration of the foregoing and of the mutual promises contained herein, the parties agree as follows:

1. The exclusive points of contact with respect to the transmission and control of Proprietary Information exchanged hereunder are designated by the respective parties as follows:

| Document # | Title | OCEANETICS |
|---|---|---|
| TQ-F-113 | NON-DISCLOSURE AGREEMENT | |

**Oceanetics Company:**

Eric Knezek
520 Ridgely Ave.
Annapolis, MD 21401
Phone: 410-699-3999
Email: eknezek@oceanetics.com

**Marine1:**

Scott Snow
117 Shirley Rd
Seaford, VA 23696
248-310-2448
stsnow@comcast.net

Each party may change its designated point of contact by written notice to the other. Disclosure of Proprietary Information other than through the exclusive points of contact named above shall not relieve the receiving party ("Recipient") of its obligation under this Agreement if the disclosure is made under conditions where the Recipient should reasonably know that the information which is disclosed is the disclosing party's Proprietary Information.

2.

    a. In order for information to be afforded protection under this Agreement, the disclosing party ("Discloser") shall identify any Proprietary Information disclosed by it hereunder as follows:

        i. all documents and other tangible materials shall be marked with an appropriate restrictive legend which indicates the proprietary nature of the material and the Discloser's interest therein such as, by way of example "Proprietary" in combination with Discloser's name; and

        ii. all other non-document disclosures made by the Discloser must be identified as proprietary at the time of disclosure and must thereafter be reduced to a written listing or summary marked with an appropriate restrictive legend and delivered to Recipient within one (1) month after the initial disclosure. During this one (1) month period, such information so disclosed shall be provided the same protection as provided for Proprietary Information marked with a restrictive legend in accordance with Section 2(a)(i) above. Such listing or summary may be provided by e-mail or facsimile transmission where receipt is confirmed by answer back or similar confirmation by the receiving terminal.

    b. The parties recognize that in certain cases, special or preferred marking requirement may apply and in such cases such requirements shall be mutually agreed in writing except in the case where such special marking requirements are required by applicable United States Government regulations in order to protect Proprietary Information which is disclosed to the United States Government.

3. With respect to Proprietary Information disclosed in accordance with the requirements of Section 2 above, the Recipient, for the period specified in Article 5 below and except as otherwise provided below, will (as to Discloser's Proprietary Information):

    a. hold it in confidence from the date of receipt under this Agreement;

| Document # | Title | OCEANETICS |
|---|---|---|
| TQ-F-113 | NON-DISCLOSURE AGREEMENT | |

b.  use it only for the purposes specified above in the recitals in connection with the use of the Discloser's Proprietary Information and/or for such other purposes as may be subsequently authorized in writing by Discloser;

c.  make it available, subject to Section 11 below, only (i) to its employees who have a need to know in order to carry out their duties in connection with the purposes specified above and who have suitable obligations of confidentiality applicable to such Proprietary Information and (ii) to certain other parties as specified in Section 6 below; and

d.  not otherwise use or disclose it except as expressly authorized in this Agreement or except as otherwise authorized in writing by the Discloser and except that if the purposes authorized above relate to a proposal to, a program for, or a contract with or for the United States Government, the Recipient may disclose Proprietary Information to the United States Government as necessary for the authorized purposes if the disclosure bears the appropriate restrictive legend and proprietary information notice permitted by the applicable government regulations related to the protection of proprietary information.

4.  The obligations of Recipient with respect to Discloser's Proprietary Information shall not apply to:

a.  information which, at the time of disclosure by Discloser to Recipient hereunder, is in the public domain;

b.  information which, after disclosure by Discloser to Recipient hereunder, becomes part of the public domain through no fault of Recipient;

c.  information which was rightfully in Recipient's possession at the time of disclosure by Discloser to Recipient hereunder and which is not subject to prior continuing obligations of confidentiality by Recipient to Discloser;

d.  information which is rightfully disclosed to Recipient by a third party having the lawful right to do so;

e.  information which has been or is hereafter released by Discloser to others without restriction; or

f.  information which is independently developed by or for Recipient without use of or reference to Proprietary Information received from Discloser pursuant to this Agreement.

5.  The obligations of Recipient under Section 3 of this Agreement with respect to Discloser's Proprietary Information shall, in any event, expire six (6) years from the termination of this agreement.

6.

| Rev Date: | This document is for reference only in print form. Refer to the Approved Documents folder on the Team Site for current version. | Page 3 of 7 |
|---|---|---|
| 07- -24 | | |

| Document # | Title | OCEANETICS |
|---|---|---|
| TQ-F-113 | NON-DISCLOSURE AGREEMENT | |

a. Recipient's obligations under Section 3 of this Agreement with respect to the protection of Discloser's Proprietary Information shall be to use the same reasonable degree of care which Recipient uses to protect its own information of similar character and in no event shall Recipient be liable for inadvertent disclosure provided that the aforementioned degree of care has been used and provided that, upon discovery of any such inadvertent disclosure, Recipient shall endeavor to correct the effects thereof and to prevent any further inadvertent disclosure.

b. Notwithstanding anything in Section 3 above to the contrary but subject to Section 11 below,

   i. Recipient may disclose Discloser's Proprietary Information to Recipient's affiliates having a need to know for the purposes specified above; provided that such affiliates have first agreed to be bound by the applicable provisions of this Agreement in the same way and to the same extent as Recipient is bound;

   ii. Recipient may disclose Discloser's Proprietary Information to legal counsel, insurers and similar third parties to the extent necessary in connection with the use of such Proprietary Information for the purposes specified above; provided that such third parties are bound by appropriate obligations of confidentiality; and

   iii. Recipient may disclose Discloser's Proprietary Information to vendors and subcontractors to the extent required in connection with the purpose specified above provided that such vendors and subcontractors have undertaken written obligations to protect Discloser's Proprietary Information in a manner at least as protective as the provisions of this Agreement or in such other form approved in writing by the Discloser. For purposes of this Agreement, affiliate means, as to either party hereto, any other entity that, directly or indirectly, is in control of, is controlled by, or is under common control with, said party. For purposes of this definition the term "control "(including the terms "controlled by" and "under common control with") means, as applied to any entity, the direct or indirect possession of the power to direct or cause the direction of the management and policies of that entity, whether through ownership of voting securities, by contract, or otherwise.

c. Notwithstanding anything in Section 3 above to the contrary, Recipient may also disclose Discloser's Proprietary Information to the extent required to comply with law or legal process, including but not limited to a court order, administrative subpoena or order, or applicable governmental regulation or statutory requirement which appears to be lawful on its face, provided that Recipient gives Discloser timely notice, where possible, of the contemplated disclosure so as to give Discloser an opportunity to intervene to preserve the confidentiality of the information.

7. In no event shall either party, its affiliates, or any of the parties mentioned in Section 6 (b) above, or any of their respective officers, directors or employees be liable for any multiple or punitive damages.

| Rev Date: | This document is for reference only in print form. Refer to the Approved Documents folder on the Team Site for current version. | Page 4 of 7 |
|---|---|---|
| 07-   -24 | | |

| Document #<br>TQ-F-113 | Title<br>NON-DISCLOSURE AGREEMENT | OCEANETICS |
|---|---|---|

8. All Proprietary Information furnished hereunder shall remain the property of the Discloser and any tangible material containing same which may be provided by Discloser to Recipient pursuant to this Agreement shall be returned to Discloser or destroyed promptly at Discloser's request together with all copies, excerpts, and/or summaries made thereof by Recipient; except that Recipient may retain one (1) copy of such material in limited access files as a record of its obligations hereunder. Upon request, Recipient shall send Discloser a destruction certificate in the case where Recipient has been instructed to destroy such materials.

9. Except as provided in Section 3 above in connection with the authorized purposes, no license under any patents, copyrights, maskworks, or any other proprietary right is granted or conveyed by Discloser pursuant to this Agreement.

10. This Agreement and any claim, controversy, or dispute arising out of or in connection with this Agreement, shall be governed by the laws of the Commonwealth of Virginia without giving effect to its internal principles of choice of law. With respect to any matter or dispute arising out of this Agreement, each party consents to and hereby submits, to the jurisdiction and venue of the federal court situated in the Eastern District of Virginia, Newport News Division (if federal jurisdiction exists), and the jurisdiction and venue of the York County Poquoson Circuit Court situated in Yorktown, Virginia (if federal jurisdiction does not exist), and both parties waive any objection to the laying of venue with respect to any such matter or dispute in either such court. Both parties hereby agree that the other party, with respect to any such matter or dispute, would be entitled to seek injunctive relief in order to enforce and protect any and all rights, duties, and obligations arising under this Agreement, but not to the exclusion of any other form of relief including without limitation money damages.

11. Without regard to the duration of its other obligations hereunder, Recipient shall control access to, and use of, information received hereunder from Discloser and the direct product thereof in accordance with all applicable US export laws and regulations, including but not limited to the International Traffic in Arms Regulations. In connection with and without limiting the general applicability of the foregoing, Recipient shall not make or permit disclosure of information received from the Discloser or supply or permit the supply of the direct product thereof which is subject to such laws or regulations to nationals of prohibited countries or to any Foreign Person (as defined in Section 120.16 of the International Traffic in Arms Regulations) unless (a) Recipient has received Discloser's express written consent to do so and (b) necessary export licenses have been obtained.

12. Any notice under, or in connection with, this Agreement shall be in writing and shall be deemed to have been given when received by the party to which said communication is directed at its address set forth below or at such other address as such party may have theretofore designated in writing to the other party hereto. A receipt evidencing delivery by certified or registered mail or by recognized commercial courier service shall constitute evidence of receipt. Any notice requiring prompt action shall be contemporaneously sent by facsimile transmission or electronic mail. For purposes of giving notices under this Agreement, the addresses of the parties are as follows:

**For Oceanetics**                              **For Marine1**

| Rev Date:<br>07-   -24 | This document is for reference only in print form. Refer to the Approved Documents folder on the Team Site for current version. | Page **5** of **7** |
|---|---|---|

| Document # | Title | OCEANETICS |
|---|---|---|
| TQ-F-113 | NON-DISCLOSURE AGREEMENT | |

Oceanetics, Inc
520 Ridgely Ave.
Annapolis, MD, 21401
Attn: Lesley Levicki
Phone: 410-571-5186
Email: llevicki@oceanetics.com

Marine1, LLC
117 Shirley Rd
Seaford, VA 23696
Scott Snow
248-310-2448
stsnow@comcast.net

13. This Agreement shall apply to Proprietary Information disclosed during the period which begins as of the date of this Agreement first written above and expires six (6) years after said date, after which, no Proprietary Information may be exchanged under the terms of this Agreement

14. Except as otherwise agreed in separate written agreements between the parties, neither party makes any representation or warranty regarding the Proprietary Information disclosed by it and neither party shall have any liability arising from the other party's use of or reliance on Proprietary Information received pursuant to this Agreement.

15. Unless otherwise subsequently agreed in writing by the parties, this Agreement supersedes any conflicting provisions of any prior written or oral agreements or understandings between the parties related to the protection of the subject Proprietary Information. This Agreement may not be amended or modified except by subsequent agreement in writing executed by a duly authorized officer or representative of each party.

16. Notwithstanding the foregoing, either Party may assign, transfer, or delegate this Agreement and its rights and obligations under this Agreement to the successor company due to a merger or acquisition of a Party.

17. Marine1 shall not release any information, make any public announcement, or confirm or deny the same, regarding any aspect of any Contract or Order without prior coordination with and the express written approval of Oceanetics. This includes, but is not limited to, advertisements, brochures, presentations, social media postings, or any other posting on any other websites. Additionally, unless specifically authorized by Oceanetics in writing, Oceanetics name, trade name, or the name or trade name of Oceanetics subsidiaries, or affiliates, or the name of Oceanetics customers, shall not be disclosed or used in Marine1 advertising or for any other purpose. Requests for approval shall be made at least fifteen (15) days before the proposed date for release and shall identify the specific information to be released, the medium to be used, and the purpose for the release. These provisions shall survive the expiry or the termination of the contract.

18. In the event of any action or proceeding brought by either party against the other under this Agreement, the prevailing party shall be entitled to recover all costs and expenses, including its attorneys' fees, court reporter fees, expert witness fees, and all other costs and disbursements, in such action or proceeding in such amount as the court may adjudge reasonable. The prevailing party shall be determined by the court based upon an assessment of which party's major arguments made or positions on major disputed issues prevailed in the court's decision. If the

| Document # | Title | OCEANETICS |
|---|---|---|
| TQ-F-113 | NON-DISCLOSURE AGREEMENT | |

party which shall have commended or instituted the action, suit or proceeding shall dismiss or discontinue it without the agreement or concurrence of the other party, such other party shall be deemed to be the prevailing party.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed in duplicate originals by their duly authorized representatives.

**Oceanetics, Inc.**

Eric C Jacobs:A01094E000001 73C0B37714000288AB

Digitally signed by Eric C Jacobs:A01094E00000173C0B37 714000288AB Date: 2024.07.25 14:22:20 -05'00'

By:_____

Eric C. Jacobs

Title:   President

**Marine1 LLC**

By:_____

Scott T. Snow

Title: President

# EXHIBIT C

*Virginia SCC Records — Oceanetics, Inc., Entity ID 06190169 (captured July 27, 2026)*

Oceanetics, Inc. v. Marine1, LLC, No. 4:26-cv-00090 (E.D. Va.)

7/27/26, 9:11 PM                                     VIRGINIA - SCC

# State Corporation Commission
## Clerk's Information System

A-    A    A+

## Entity Information

### Entity Information

| | | | |
|---|---|---|---|
| Entity Name: | Oceanetics, Inc. | Entity ID: | 06190169 |
| Entity Type: | Stock Corporation | Entity Status: | **Active** |
| Series LLC: | N/A | Reason for Status: | Active and In Good Standing |
| Formation Date: | 06/17/2004 | Status Date: | 06/17/2004 |
| VA Qualification Date: | 06/17/2004 | Period of Duration: | Perpetual |
| Industry Code: | 0 - General | Annual Report Due Date: | N/A |
| Jurisdiction: | VA | Charter Fee: | $50.00 |
| Registration Fee Due Date: | Not Required | | |

### Registered Agent Information

| | | | |
|---|---|---|---|
| RA Type: | Individual | Locality: | JAMES CITY COUNTY |
| RA Qualification: | Member of the Virginia State Bar | | |

Privacy Policy      Contact Us

https://cis.scc.virginia.gov/EntitySearch/BusinessInformation?businessId=106206&source=FromEntityResult&isSeries = false          1/3

7/27/26, 9:11 PM                                        VIRGINIA - SCC

Name: Robyn H. Hansen                Registered Office  4801 Courthouse St Ste
                                     Address:   203, Williamsburg, VA,
                                                23188 - 2678, USA

## Principal Office Address

Address:  111 Annapolis St,
          Annapolis, MD, 21401 -
          1309, USA

## Principal Information

| Title | Director | Name | Address | Last Updated |
|---|---|---|---|---|
| Chief Financial Officer | No | LESLEY LEVICKI | 1734 LONG GREEN DR, ANNAPOLIS, MD, 21409 - 0000, USA | 06/23/2025 |
| President | No | ERIC JACOBS | 7466 CAPILLA DRIVE, ST. LOUIS, MO, 63123 - 0000, USA | 06/11/2019 |
| CEO | Yes | MATTHEW A. MARCY | 51 Overlook Drive, Annapolis, MD, 21401 - 0000, USA | 05/28/2026 |
| Secretary | No | Christopher Pfaff | 249 Mill Church Road, Arnold, MD, 21012, USA | 06/16/2025 |
| Chief Executive Officer | Yes | Erick B. Knezek | 202-A Princeton Woods Loop, Lafayette, LA, 70508, USA | 06/27/2025 |

## Current Shares

VIRGINIA - SCC

Total Shares:  10000

Filing History        RA History        Name History        Previous Registrations

Garnishment Designees        Image Request

(Back)  ( Return to Search )  ( Return to Results )

Back to Login

Privacy Policy        Contact Us

7/27/26, 9:12 PM                                    VIRGINIA - SCC

# State Corporation Commission
# Clerk's Information System

A-   [ A ]   A+

## Name History

### Entity Information

| | | | |
|---|---|---|---|
| Entity Name: | Oceanetics, Inc. | Entity ID: | 06190169 |
| Entity Type: | Stock Corporation | Entity Status: | **Active** |
| Series LLC: | N/A | Reason for Status: | Active and In Good Standing |
| Formation Date: | 06/17/2004 | Status Date: | 06/17/2004 |
| VA Qualification Date: | 06/17/2004 | Period of Duration: | Perpetual |
| Industry Code: | 0 - General | Annual Report Due Date: | N/A |
| Jurisdiction: | VA | Charter Fee: | $50.00 |
| Registration Fee Due Date: | Not Required | | |

## Name History Details

7/27/26, 9:12 PM                                                    VIRGINIA - SCC

| Effective Start Date | Effective End Date | Name | Name Type |
|---|---|---|---|
| 01/22/2020 | N/A | Truston Technologies, Inc. | Fictitious Name |
| 06/05/2017 | N/A | TRUSTON (YORK CO) | Fictitious Name |
| 06/05/2017 | N/A | TRUSTON, INC. (YORK CO) | Fictitious Name |
| 04/13/2011 | N/A | TRU-STA INTERNATIONAL (YORK CO) | Fictitious Name |
| 01/09/2020 | N/A | Oceanetics, Inc. | Legal Name |
| 06/17/2004 | 01/09/2020 | TRUSTON TECHNOLOGIES, INC. | Former Name |

Page 1 of 1, records 1 to 6 of 6

Back      Return to Search

Return to Results

Back to Login

Privacy Policy      Contact Us

https://cis.scc.virginia.gov/EntitySearch/BusinessNameHistory                                          2/2

VIRGINIA - SCC

# State Corporation Commission
## Clerk's Information System

A-    A    A+

## RA History

### Entity Information

| | | | |
|---|---|---|---|
| Entity Name: | Oceanetics, Inc. | Entity ID: | 06190169 |
| Entity Type: | Stock Corporation | Entity Status: | **Active** |
| Series LLC: | N/A | Reason for Status: | Active and In Good Standing |
| Formation Date: | 06/17/2004 | Status Date: | 06/17/2004 |
| VA Qualification Date: | 06/17/2004 | Period of Duration: | Perpetual |
| Industry Code: | 0 - General | Annual Report Due Date: | N/A |
| Jurisdiction: | VA | Charter Fee: | $50.00 |
| Registration Fee Due Date: | Not Required | | |

### RA History Details

| Appointed Date | End Date | RA Name | RO Address | Locality | RA Qualification |
|---|---|---|---|---|---|
| 12/19/2023 | N/A | Robyn H. Hansen | 4801 Courthouse St Ste 203, Williamsburg, VA, 23188, USA | JAMES CITY COUNTY | Member of the Virginia State Bar |
| N/A | 12/19/2023 | HERBERT V KELLY JR | FOUNTAIN PLAZA ONE, 701 TOWN CTR DR STE 800, NEWPORT NEWS, VA, 23606, USA | NEWPORT NEWS CITY | Member of the Virginia State Bar |

**Page 1 of 1, records 1 to 2 of 2**

Back        Return to Search

Return to Results

Back to Login

Privacy Policy        Contact Us

# EXHIBIT D

*SAM.gov Registration — Oceanetics, Inc. — CAGE Code 4ZBU1 / Unique Entity ID ZK69GHTNHKP7 — Physical Address: 117 Shirley Road, Seaford, VA 23696 (captured July 28, 2026)*

Oceanetics, Inc. v. Marine1, LLC, No. 4:26-cv-00090 (E.D. Va.)

7/28/26, 8:45 AM　　　　　　　　　　　　　　　SAM.gov

🇺🇸 An official website of the United States government　Here's how you know

⚠️　**SAM.gov NAICS Code Size Table Discrepancy**
　　**Show Details**
　　*Jul 24, 2026*

　　　**See All Alerts**

　　**Roles and Subcontracting Plan Reporting**
　　**Show Details**
　　*Jul 15, 2026*



 **SAM**.GOV®　　　　　　　✏️　🔔　⊞　→

Home　　Search　　Data Bank　　Data Services　　Help

〈　**Core Data**　　　　　　　　　　　　　⋮

| Entity Registration |
|---|
| **Core Data** |
| Business Information |
| Entity Types |
| Financial Information |
| Points of Contact |
| **Assertions** |
| **Reps and Certs (FAR/DFARS)** |
| **Reps and Certs (Financial Assistance)** |
| **Exclusions** |
| **Responsibility / Qualification** |

**Entity Information**

Active Registration

# OCEANETICS, INC.

| Unique Entity ID | CAGE/NCAGE | *Expiration Date* |
|---|---|---|
| **ZK69GHTNHKP7** | **4ZBU1** | Nov 4, 2026 |

Physical Address

**117 Shirley RD**
**Seaford, Virginia**
**23696-2042, United States**

Mailing Address

**111 Annapolis ST.**
**Annapolis, Maryland**
**21401-1118, United States**

Purpose of Registration
**All Awards**

Version

Current Record

## BUSINESS INFORMATION

| Doing Business As | URL |
|---|---|
| **(blank)** | **http://www.Oceanetics.com** |
| Division Name | Division Number |
| **(blank)** | **(blank)** |
| Congressional District | State/Country of Incorporation |
| **Virginia 01** | **Virginia, United States** |

### Registration Dates

| Activation Date | Initial Registration Date |
|---|---|
| **Nov 6, 2025** | **Feb 1, 2008** |
| Submission Date | |
| **Nov 4, 2025** | |

| Owner | CAGE | Legal Business Name |
|---|---|---|
| **Immediate Owner** | **(blank)** | **(blank)** |
| **Highest Level Owner** | **(blank)** | **(blank)** |

### Entity Dates

| Entity Start Date | Fiscal Year End Close Date |
|---|---|
| **Jun 17, 2004** | **Dec 31** |

## Executive Compensation

Registrants in the System for Award Management (SAM) respond to the Executive Compensation questions in accordance with Section 6202 of P.L. 110-252, amending the Federal Funding Accountability and Transparency Act (P.L. 109-282). This information is not displayed in SAM. It is sent to USAspending.gov for display in association with an eligible award. Maintaining an active registration in SAM demonstrates the registrant responded to the questions.

# SAM SEARCH AUTHORIZATION

I authorize my entity's non-sensitive information to be displayed in SAM public search results:

☑ Yes

# ENTITY TYPES

## Business Types

| Entity Structure | **Corporate Entity (Not Tax Exempt)** |
| --- | --- |
| Entity Type | **Business or Organization** |
| Profit Structure | **For Profit Organization** |
| Organization Factors | **Manufacturer of Goods, Subchapter S Corporation** |

## Socio-Economic Types

**Veteran-Owned Business, Service-Disabled Veteran-Owned Business**

Check the registrant's Reps & Certs, if present, under FAR 52.212-3 or FAR 52.219-1 to determine if the entity is an SBA-certified HUBZone small business concern. Additional small business information may be found in the SBA's Dynamic Small Business Search if the entity completed the SBA supplemental pages during registration.

**SBA Certified HUBZone Firm**
Entrance Date: **Jul 23, 2018**
Exit Date: **(blank)**

# FINANCIAL INFORMATION

# Payments

| | |
|---|---|
| **Accepts Credit Card Payments**<br>**Yes** | **Debt Subject To Offset** ⑦<br>**No** |

## ACCOUNT DETAILS

EFT Indicator **0000**
CAGE Code **4ZBU1**

# POINTS OF CONTACT

# Electronic Business

### Primary Point of Contact

## Christopher Pfaff

Address
**111 Annapolis ST.**
**Annapolis, Maryland 21401**
**United States**

# Government Business

### Primary Point of Contact

## Christopher Pfaff

Address
**111 Annapolis ST.**
**Annapolis, Maryland 21401**

**United States**

# Past Performance

## Primary Point of Contact

## Christopher Pfaff

Address
**111 Annapolis ST.**
**Annapolis, Maryland 21401**
**United States**

## Our Website

About This Site

Our Community

Release Notes

System Alerts

## Policies

Terms of Use

Privacy Policy

Restricted Data Use

Freedom of Information Act

Accessibility

## Our Partners

Acquisition.gov

USASpending.gov

Grants.gov

More Partners

## Customer Service

Help

Check Entity Status

Federal Service Desk

External Resources

Contact



### ⚠ WARNING

This is a U.S. General Services Administration Federal Government computer system that is **"FOR OFFICIAL USE ONLY."** This system is subject to monitoring. Individuals found performing unauthorized activities are subject to disciplinary action including criminal prosecution.

This system contains Controlled Unclassified Information (CUI). All individuals viewing, reproducing or disposing of this information are required to protect it in accordance with 32 CFR Part 2002 and GSA Order CIO 2103.2 CUI Policy.

# SAM.gov
# An official website of the U.S. General Services Administration

# EXHIBIT E

*Loan Agreement, Fully Executed — Effective December 20, 2018*

Oceanetics, Inc. v. Marine1, LLC, No. 4:26-cv-00090 (E.D. Va.)

**LOAN AGREEMENT**

This Loan Agreement (the "Agreement") is made and effective **December 20, 2018**,

BETWEEN:        Truston (the "Lender"), a corporation organized and existing under the laws of Virginia

AND:        Marine1, LLC (the "Borrower").

1.        PROMISE TO PAY

Within 64 months from the date of this Agreement, Borrower promises to repay to Lender the loaned sum of $90.000.00 plus interest as stated below.

2.        BREAKDOWN OF LOAN

| | |
|---|---|
| Amount of Loan: | $90,000.00 |
| Rate: | Fixed annual interest rate of 0.2% |
| Term: | 5 years (60 months) |
| Payment Deferral Period: | 3 months (90 days) |

3.        REPAYMENT

Borrower will repay the amount of this note in monthly installments of **$1,507.64**. The first payment shall be due 90 days (3 months) after the effective date of this Agreement.  Subsequent payments shall be due on the same day of the month each month thereafter (or the last day of the month if that date does not exist).  Please note, it is the expressed desire of the Borrower to repay this loan in full with proceeds from its expected follow-on SBIR Phase-2 Contract.

4.        PREPAYMENT

Borrower has the right to make early payments without penalty, and may satisfy this loan by paying the full principal at any time.

5.        LATE CHARGE

Any installment not paid within 30 days of its due date shall be subject to a late charge of 10% of the payment, not to exceed $500 for any such late installment.

6.        SECURITY

To protect Lender, Borrower provides M/V Warrior Princess as collateral.  Borrower shall give free and clear title to Lender, and Lender shall secure title in a safe in its headquarters office.  Lender shall take no other actions with title unless Borrower defaults on this loan.  If Borrower defaults on this loan, Lender may take possession of and sell M/V Warrior Princess to satisfy Borrower's obligations under this Agreement.  Borrower shall take no other loans against M/V Warrior Princess, and Borrower shall maintain hull insurance for not less than 150% of the value of this loan.

7.     DEFAULT

If for any reason Borrower fails to make any payment within 60 days of its due date, Borrower shall be in default.  The Lender can then demand immediate payment of the entire remaining unpaid balance of this loan, without giving anyone further notice, and Lender may take possession of and sell collateral assets listed in the Security section of this Agreement.

8.     RIGHT OF OFFSET

If this loan becomes past due, the Lender will have the right to pay this loan from any deposit or security Borrower has with this Lender without notice to Borrower.  If the Lender gives Borrower an extension of time to pay this loan, Borrower still must repay the entire loan.

9.     COLLECTION FEES

If this note is placed with an attorney for collection, then Borrower agrees to pay an attorney's fee of 5% of the unpaid balance.  This fee will be added to the unpaid balance of the loan.

This agreement is entered into and effective the date first stated above.

|  | Lender | Borrower |
|---|---|---|
| Signature: |  |  |
| Name: | Lesley Levicki | Scott Snow |
| Title: | Chief Financial Officer | President |

# EXHIBIT F

*Utilities Correspondence (October 11 – November 18, 2019) and Truston Utilities Invoices (March 2018 – October 2019)*

Oceanetics, Inc. v. Marine1, LLC, No. 4:26-cv-00090 (E.D. Va.)

**From:** Breah Rockwell <brockwell@truston.us>
**Sent:** Monday, November 18, 2019 4:02 PM
**To:** Scott Snow <stsnow@comcast.net>
**Subject:** RE: Utilities

Hi Scott,

Attached is an invoice for Oct Utilities.

Thank you,

Breah Rockwell
Truston
520 Ridgely Avenue
Annapolis MD 21401
410-571-5186 Office
410-510-1095 Fax
www.truston.us
*ISO 9001:2015 Certified*

IMPORTANT: This e-mail, including all attachments, constitute Truston records and property that is intended only for the use of the individual or entity to which it is addressed. It also may contain information that is privileged, confidential, or otherwise protected from disclosure under applicable law. If the reader of this e-mail transmission is not the intended recipient or the employee agent responsible for delivering the transmission to the intended recipient, you are hereby notified that any dissemination, distribution, copying or use of this e-mail or its contents is strictly prohibited. If you have received this e-mail in error, please notify the sender by responding to the e-mail and then delete the e-mail immediately.

**From:** Scott Snow <stsnow@comcast.net>
**Sent:** Tuesday, October 15, 2019 2:32 PM
**To:** Breah Rockwell <brockwell@truston.us>
**Subject:** RE: Utilities

Hi Breah:

This is tremendously helpful – thank you.

Kind regards,

Scott

**From:** Breah Rockwell <brockwell@truston.us>
**Sent:** Tuesday, October 15, 2019 2:12 PM
**To:** Scott Snow <stsnow@comcast.net>
**Subject:** RE: Utilities

Hi Scott,

I am not sure if you have spoken to Matt already. He said you can make this utilities payment following receipt of your next contract milestone payment from the Government.

Thank you,

Breah Rockwell
Admin & Facility Security Officer
Truston
520 Ridgely Avenue
Annapolis MD 21401
410-571-5186 Office
410-510-1095 Fax
www.truston.us
*ISO 9001:2015 Certified*

IMPORTANT: This e-mail, including all attachments, constitute Truston records and property that is intended only for the use of the individual or entity to which it is addressed. It also may contain information that is privileged, confidential, or otherwise protected from disclosure under applicable law. If the reader of this e-mail transmission is not the intended recipient or the employee agent responsible for delivering the transmission to the intended recipient, you are hereby notified that any dissemination, distribution, copying or use of this e-mail or its contents is strictly prohibited. If you have received this e-mail in error, please notify the sender by responding to the e-mail and then delete the e-mail immediately.

**From:** Scott Snow <stsnow@comcast.net>
**Sent:** Friday, October 11, 2019 6:17 PM
**To:** Breah Rockwell <brockwell@truston.us>
**Cc:** Lesley Levicki <llevicki@truston.us>; Matthew Marcy <mmarcy@truston.us>
**Subject:** RE: Utilities

Hi Breah:

Is it possible for me to pay this following receipt of my next contract milestone payment from the Government? The milestone is met when I successfully test aboard the new demonstrator. I expect the test event to occur sometime in December 2019. I will pay the entire outstanding balance in 1 payment / check.

Very kind regards,

Scott

**From:** Breah Rockwell <brockwell@truston.us>
**Sent:** Friday, October 11, 2019 12:36 PM
**To:** Scott Snow <stsnow@comcast.net>
**Cc:** Lesley Levicki <llevicki@truston.us>
**Subject:** Utilities

Hi Scott,

Matt said he will talk to you about the attached when he discusses other things with you regarding lease/property.

Thanks!

Breah Rockwell
Admin & Facility Security Officer

520 Ridgely Avenue
Annapolis MD 21401
410-571-5186 Office
410-510-1095 Fax
www.truston.us
*ISO 9001:2015 Certified*

IMPORTANT: This e-mail, including all attachments, constitute Truston records and property that is intended only for the use of the individual or entity to which it is addressed. It also may contain information that is privileged, confidential, or otherwise protected from disclosure under applicable law. If the reader of this e-mail transmission is not the intended recipient or the employee agent responsible for delivering the transmission to the intended recipient, you are hereby notified that any dissemination, distribution, copying or use of this e-mail or its contents is strictly prohibited. If you have received this e-mail in error, please notify the sender by responding to the e-mail and then delete the e-mail immediately.



# INVOICE

Bill to:

Marine1 LLC
117 Shirley Road
Seaford, VA 23696

Utilities including electric, gas, water, sewer, and dumpster service from March 2018 through September 2019.

Total due $8,217.77

**Mailing / Remittance:**
520 Ridgely Ave
Annapolis, MD 21401

www.truston.us

**Contact:**
PH: +1 (410) 571 5186
Fax: +1 (410) 510 1095

Truston Technologies, Inc.
**Transaction Detail By Account**
March 1, 2018 through September 24, 2019

| Type | Date | Num | Source Name | Memo | Amount |
|---|---|---|---|---|---|
| Bill | 03/14/2018 | 2023588441 | Dominion VA Power | Electric | 195.55 |
| Bill | 03/14/2018 | 4453265433 | Dominion VA Power | Electric | 16.54 |
| Bill | 03/15/2018 | 43804 | Treasurer, County of York | Sewer | 20.00 |
| Bill | 04/05/2018 | 3405305459 | HRSD | Wastewater Treatment | 17.10 |
| Bill | 04/05/2018 | 200000304345 | Newport News Waterworks | Water | 38.00 |
| Bill | 04/13/2018 | 4453265433 | Dominion VA Power | Electric | 24.57 |
| Bill | 04/13/2018 | 2023588441 | Dominion VA Power | Electric | 55.54 |
| Bill | 05/14/2018 | 4453265433 | Dominion VA Power | Electric | 16.06 |
| Bill | 05/14/2018 | 2023588441 | Dominion VA Power | Electric | 75.50 |
| Bill | 05/24/2018 | 2896951-2425-4 | Waste Management of Hampton Roads | Dumpster | 209.84 |
| Bill | 05/30/2018 | 200000304345 | Newport News Waterworks | Water | 34.02 |
| Bill | 05/30/2018 | 3405305459 | HRSD | Wastewater Treatment | 15.60 |
| Bill | 06/13/2018 | 4453265433 | Dominion VA Power | Electric | 15.75 |
| Bill | 06/13/2018 | 2023588441 | Dominion VA Power | Electric | 95.52 |
| Bill | 06/25/2018 | 2904864-2425-9 | Waste Management of Hampton Roads | Dumpster | 209.34 |
| Bill | 07/02/2018 | 819684 | Revere Gas | Gas | 141.68 |
| Bill | 07/13/2018 | 2023588441 | Dominion VA Power | Electric | 193.04 |
| Bill | 07/13/2018 | 4453265433 | Dominion VA Power | Electric | 15.48 |
| Bill | 07/15/2018 | 43804 | Treasurer, County of York | Sewer | 40.00 |
| Bill | 07/19/2018 | 3405305459 | HRSD | Wastewater Treatment | 15.60 |
| Bill | 07/19/2018 | 200000304345 | Newport News Waterworks | Water | 36.93 |
| Bill | 07/25/2018 | 2910301-2425-4 | Waste Management of Hampton Roads | Dumpster | 209.10 |
| Bill | 08/13/2018 | 4453265433 | Dominion VA Power | Electric | 15.15 |
| Bill | 08/13/2018 | 2023588441 | Dominion VA Power | Electric | 263.30 |
| Bill | 08/21/2018 | 3405305459 | HRSD | Wastewater Treatment | 16.11 |
| Bill | 08/21/2018 | 200000304345 | Newport News Waterworks | Water | 35.71 |
| Bill | 08/24/2018 | 2915782-2425-0 | Waste Management of Hampton Roads | Dumpster | 209.86 |
| Bill | 09/12/2018 | 2023588441 | Dominion VA Power | Electric | 369.35 |
| Bill | 09/12/2018 | 4453265433 | Dominion VA Power | Electric | 15.33 |
| Bill | 09/25/2018 | 2921104-2425-9 | Waste Management of Hampton Roads | Dumpster | 209.72 |
| Bill | 09/25/2018 | 3405305459 | HRSD | Wastewater Treatment | 16.11 |
| Bill | 09/25/2018 | 200000304345 | Newport News Waterworks | Water | 26.49 |
| Bill | 10/11/2018 | 2023588441 | Dominion VA Power | Electric | 230.02 |
| Bill | 10/11/2018 | 4453265433 | Dominion VA Power | Electric | 15.24 |
| Bill | 10/23/2018 | 200000304345 | Newport News Waterworks | Water | 24.42 |
| Bill | 10/23/2018 | 3405305459 | HRSD | Wastewater Treatment | 16.11 |
| Bill | 10/26/2018 | 2927268-2425-6 | Waste Management of Hampton Roads | Dumpster | 211.08 |
| Bill | 10/31/2018 | 43804 | Treasurer, County of York | Sewer | 21.69 |
| Bill | 11/09/2018 | 2023588441 | Dominion VA Power | Electric | 85.61 |
| Bill | 11/09/2018 | 4453265433 | Dominion VA Power | Electric | 15.45 |
| Bill | 11/15/2018 | 43804 | Treasurer, County of York | Sewer | 53.38 |
| Bill | 11/20/2018 | 2933386-2425-8 | Waste Management of Hampton Roads | Dumpster | 209.84 |
| Bill | 11/27/2018 | 200000304345 | Newport News Waterworks | Water | 46.75 |
| Bill | 11/27/2018 | 3405305459 | HRSD | Wastewater Treatment | 42.96 |
| Bill | 12/12/2018 | 2023588441 | Dominion VA Power | Electric | 164.55 |
| Bill | 12/12/2018 | 4453265433 | Dominion VA Power | Electric | 15.04 |
| Bill | 12/19/2018 | 2938652-2425-8 | Waste Management of Hampton Roads | Dumpster | 230.09 |
| Bill | 01/14/2019 | 202358841 | Dominion VA Power | Electric | 87.69 |
| Bill | 01/14/2019 | 4453265433 | Dominion VA Power | Electric | 14.80 |
| Bill | 01/25/2019 | 2943840-2425-2 | Waste Management of Hampton Roads | Dumpster | 229.56 |
| Bill | 01/28/2019 | 200000304345 | Newport News Waterworks | Water | 17.14 |
| Bill | 02/13/2019 | 2023588441 | Dominion VA Power | Electric | 198.78 |
| Bill | 02/13/2019 | 4453265433 | Dominion VA Power | Electric | 28.73 |
| Bill | 02/19/2019 | 200000304345 | Newport News Waterworks | Water | 33.00 |
| Bill | 02/25/2019 | 2949028-2425-8 | Waste Management of Hampton Roads | Dumpster | 230.10 |
| Bill | 03/14/2019 | 2023588441 | Dominion VA Power | Electric | 14.86 |
| Bill | 03/14/2019 | 4453265433 | Dominion VA Power | Electric | 3.16 |
| Bill | 03/15/2019 | 43804 | Treasurer, County of York | Sewer | 18.31 |
| Bill | 03/19/2019 | 3405305459 | HRSD | Wastewater Treatment | 9.69 |
| Bill | 03/19/2019 | 200000304345 | Newport News Waterworks | Water | 7.06 |
| Bill | 03/25/2019 | 2954189-2425-0 | Waste Management of Hampton Roads | Dumpster | 230.93 |

**Truston Technologies, Inc.**
**Transaction Detail By Account**
March 1, 2018 through September 24, 2019

| Type | Date | Num | Source Name | Memo | Amount |
|---|---|---|---|---|---|
| Bill | 04/12/2019 | 2023588441 | Dominion VA Power | Electric | 117.22 |
| Bill | 04/12/2019 | 4453265433 | Dominion VA Power | Electric | 15.58 |
| Bill | 04/15/2019 | 3405305459 | HRSD | Wastewater Treatment | 10.74 |
| Bill | 04/15/2019 | 200000304345 | Newport News Waterworks | Water | 23.50 |
| Bill | 04/25/2019 | 2959247-2425-1 | Waste Management of Hampton Roads | Dumpster | 232.00 |
| Bill | 05/14/2019 | 2023588441 | Dominion VA Power | Electric | 106.40 |
| Bill | 05/14/2019 | 4453265433 | Dominion VA Power | Electric | 14.94 |
| Bill | 05/15/2019 | 43804 | Treasurer, County of York | Sewer | 20.00 |
| Bill | 05/16/2019 | 200000304345 | Newport News Waterworks | Water | 21.73 |
| Bill | 05/16/2019 | 3405305459 | HRSD | Wastewater Treatment | 10.74 |
| Bill | 05/24/2019 | 2964416-2425-5 | Waste Management of Hampton Roads | Dumpster | 232.15 |
| Bill | 06/13/2019 | 2023588441 | Dominion VA Power | Electric | 163.65 |
| Bill | 06/13/2019 | 4453265433 | Dominion VA Power | Electric | 5.12 |
| Bill | 06/20/2019 | 3405305459 | HRSD | Wastewater Treatment | 16.11 |
| Bill | 06/20/2019 | 200000304345 | Newport News Waterworks | Water | 25.75 |
| Bill | 06/25/2019 | 2969877-2425-3 | Waste Management of Hampton Roads | Dumpster | 230.51 |
| Bill | 07/15/2019 | 43804 | Treasurer, County of York | Sewer | 20.00 |
| Bill | 07/15/2019 | 2023588441 | Dominion VA Power | Electric | 230.22 |
| Bill | 07/15/2019 | 4453265433 | Dominion VA Power | Electric | 14.90 |
| Bill | 07/23/2019 | 3405305459 | HRSD | Wastewater Treatment | 12.20 |
| Bill | 07/23/2019 | 200000304345 | Newport News Waterworks | Water | 22.76 |
| Bill | 07/25/2019 | 2974945-2425-1 | Waste Management of Hampton Roads | Dumpster | 230.51 |
| Bill | 08/13/2019 | 2023588441 | Dominion VA Power | Electric | 257.09 |
| Bill | 08/13/2019 | 4453265433 | Dominion VA Power | Electric | 14.92 |
| Bill | 08/20/2019 | 3405305459 | HRSD | Wastewater Treatment | 11.49 |
| Bill | 08/20/2019 | 200000304345 | Newport News Waterworks | Water | 22.39 |
| Bill | 08/26/2019 | 2980011-2425-4 | Waste Management of Hampton Roads | Dumpster | 229.85 |
| Bill | 09/12/2019 | 4453265433 | Dominion VA Power | Electric | 16.13 |
| Bill | 09/12/2019 | 202358841 | Dominion VA Power | Electric | 228.74 |
| Bill | 09/15/2019 | 43804 | Treasurer, County of York | Sewer | 20.00 |
| Bill | 09/19/2019 | 3405305459 | HRSD | Wastewater Treatment | 13.19 |
| Bill | 09/19/2019 | 200000304345 | Newport News Waterworks | Water | 23.46 |
| Bill | 09/25/2019 | 2985177-2425-8 | Waste Management of Hampton Roads | Dumpster | 229.85 |
| | | | | | 8,217.77 |



# INVOICE

Bill to:

Marine1 LLC
117 Shirley Road
Seaford, VA 23696

Utilities including electric, gas, water, and dumpster service for October 2019.

Total due $481.48

Mailing / Remittance:
520 Ridgely Ave
Annapolis, MD 21401

www.truston.us

Contact:
PH: +1 (410) 571 5186
Fax: +1 (410) 510 1095

# Truston Technologies, Inc.
# Transaction Detail By Account
## October 2019

| Date | Num | Source Name | Memo | Amount |
|------|-----|-------------|------|--------|
| 10/11/2019 | 2023588441 | Dominion VA Power | Electric | 200 33 |
| 10/11/2019 | 4453265433 | Dominion VA Power | Electric | 15 06 |
| 10/21/2019 | 200000304345 | Newport News Waterworks | Water | 21 88 |
| 10/21/2019 | 3405305459 | HRSD | Wastewater Treatment | 10 67 |
| 10/25/2019 | 2990317-2425-3 | Waste Management of Hampton Roads | Dumpster | 233 54 |
| | | | | 481 48 |
| | | | | 481 48 |
| | | | | 481.48 |

# EXHIBIT G

*Email of Eric Jacobs, President of Oceanetics, April 7, 2026 ("Moving Forward"), with Marine1's April 9, 2026 Response*

Oceanetics, Inc. v. Marine1, LLC, No. 4:26-cv-00090 (E.D. Va.)

From: stsnow@comcast.net <stsnow@comcast.net>
Sent: Thursday, April 9, 2026 8:05 AM
To: 'Eric Jacobs' <ejacobs@oceanetics.com>
Cc: 'Matthew Marcy' <mmarcy@oceanetics.com>; 'Erick Knezek'
<eknezek@oceanetics.com>; 'Chris Pacheco' <cpacheco@oceanetics.com>;
'elena@knezeklaw.com' <elena@knezeklaw.com>
Subject: RE: Moving Forward (Marine1 Proprietary)

Eric,

I am in receipt of your 2026/04/07 correspondence.

I am in the process of retaining legal counsel and will not be available for
a call on Friday 2026/04/10. I will respond substantively through or
alongside counsel.

All rights reserved.

Respectfully,

Scott T. Snow

Marine1 LLC

(248) 310-2448

From: Eric Jacobs <ejacobs@oceanetics.com>
Sent: Tuesday, April 7, 2026 12:03 PM
To: Scott Snow <stsnow@comcast.net>
Cc: Matthew Marcy <mmarcy@oceanetics.com>; Erick Knezek
<eknezek@oceanetics.com>; Chris Pacheco <cpacheco@oceanetics.com>;
'elena@knezeklaw.com' <elena@knezeklaw.com>
Subject: Moving Forward

Scott,

We have reviewed your email and the allegations you raise. Your assertions
that Oceanetics is in breach of the Teaming Agreement and NDA are incorrect
and are expressly contradicted by the governing agreements.

First, your claim regarding "unauthorized changes" to submissions is
directly inconsistent with the Teaming Agreement. As you know, the agreement
provides that Oceanetics, as PRIME, has the sole right to determine the form
and content of all documents submitted to the customer (See Teaming
Agreement, p. 2, P 8). Your consent is not required for proposal content,
and your position to the contrary has no contractual basis.

Second, your complaints regarding alleged omissions of subcontract terms,
SBIR language, or IP provisions are misplaced. The Teaming Agreement does
not require inclusion of such terms at the proposal or purchase order stage.
Rather, it provides only that the parties will engage in good faith
negotiations toward a subcontract if and when a prime contract is awarded
(Teaming Agreement, p. 2-3, P 9). Your attempt to impose additional
requirements now is unsupported.

Third, your assertion that Oceanetics has improperly withheld RFP or PWS
materials is likewise unfounded. The agreement clearly establishes
Oceanetics as the primary interface with the customer and does not obligate
unrestricted document sharing (Teaming Agreement, p. 3, P 12). Oceanetics
has acted consistently with that structure.

Fourth, your NDA allegations are unsupported. The NDA applies only to
properly marked proprietary information and expressly permits use of such
information for proposal and related business purposes (NDA, p. 2 §2(a); p.
3 §3(b)). There has been no misuse or improper disclosure by Oceanetics.

More broadly, your characterization of Oceanetics' conduct ignores the record. Oceanetics has engaged with the KO via USMI, provided relevant FAR flowdowns, and worked to structure a path forward that reduces risk to all parties. Your continued misstatements and shifting positions do not reflect good faith engagement.

At this point, we are not going to continue debating these issues over email. We are requiring a call to address this directly. We are available Friday between Noon and 4:00 pm EDT (please provide your specific availability within that window). If that time does not work, you must propose an alternative within 24 hours. If you are acting in good faith, there should be no issue addressing this promptly.

For clarity and to avoid further mischaracterizations, the call will be recorded.

We reserve all rights under the Teaming Agreement, NDA, and applicable law.

Additionally, we have exhausted years of Good Faith with you including loans, a lease, and tolerating hundreds of thousands of dollars owed. Separately, we have spent a significant amount of effort and man hours performing business development and trying to help you make money.

We have a choice right now.

1. LITIGATION: We can litigate on your multiple breaches of signed agreements. Please appreciate we have zero hesitation on our likelihood of success with the litigation as well as the negative impacts to you emotionally and financially. We would like to avoid this path, yet your obstinacy and inability to comprehend the realities of our situation are driving toward this point.

2. PROMPT COMMERCIAL RESOLUTION: We can quickly craft a way forward to meet the current opportunities and help the sailor end user. You will make money, 50% of profits with zero contract financing, risk, or business development costs. Your technology will be in SOCOM boats instead of a potential competitor's technology. Furthermore, we can grow this capability beyond anything you could have done or have done to date.

We can discuss these two options on our call, but now is the time to choose. We can assure you of several imminent points that may help you understand the reality, again:

* We are here both because of your technology as well as the Oceanetics business reputation, years of business development efforts, and our proven ability to execute hundreds of millions in government contracts. You seem to discount the effort and expense taken by Oceanetics.

* It is in our mutual best interests to protect your IP. Considering this client, it is also in their best interests to protect the IP. This goes well beyond your repeated references to an SBIR that neither we nor the client participated in. You have your SBIR protections from your efforts. We can assure you that we will continue to attempt add terms to protect your IP as we get more opportunities.

* Both Oceanetics and Marine 1 are obligated to the same flow down FAR/DFAR clauses of their respective contracts (as previously provided to you via email forwarded from USMI). Additionally, there are constantly new defense laws being implemented to protect us against the major powers, such as the domestic flight controller requirements introduced on Dec 18, 2025 in the 2026 NDAA.

* The "RFP" is a negotiation, not a published government RFP. We have been working on the language to make sure it is clear and unambiguous. We could include you on internal discussions, but you have been unresponsive and uncooperative. We'd be happy to bring you back into mutually beneficial discussions on the technical aspects of the RFP. This opportunity could have been 15 boats but it is now 3 because of the uncertainty of our Team. We feel that, working together productively, we could sell in the whole CCA platform.

* If we cannot tell USMI that we've been able to work out a mutually beneficial deal with you in the immediate future, this opportunity will simply die for both you and Oceanetics.

* We've been trying to negotiate a way forward with a modification of the teaming agreement with you for well over a month. Negotiating due to circumstances and the realities of the opportunity, as well as customer perception, is allowable, and well within Good Faith. The client cannot and will not accept the single point of failure that you represent to Oceanetics, USMI, and the Navy. Certainly, you can understand why considering your history, your financial insolvency, lack of federal contracting maturity and cybersecurity, and the need for programmatic planning and financial investment. Considering we are also at war, we'd hope you could grasp this concept even more.

* Finally, we want to see the Blind Bat technology in every SOCOM boat. We have put us on a path to get there in the near future. If we don't act on this now, we will lose the opportunity. With this success, we can grow to other vessels as opportunities arise. We've provided you a way forward to make significant income and protect your IP. The first step

is you being responsive to all key Oceanetics employees working in this program and reaching an agreement on the work share that instills confidence in Oceanetics, USMI, and the Navy.

Respectfully,

Eric C. Jacobs

President

111 Annapolis Street

Annapolis, MD 21401

(410) 571-5186

(314) 750-7880 (cell)

www.oceanetics.com

ISO 9001:2015 Certified

IMPORTANT: This e-mail, including all attachments, constitutes Oceanetics' records and property that is intended only for the use of the individual or entity to which it is addressed. It also may contain information that is privileged, confidential, or otherwise protected from disclosure under applicable law or non-disclosure agreement. If the reader of this e-mail transmission is not the intended recipient or the employee agent responsible for delivering the transmission to the intended recipient, you are hereby notified that any dissemination, distribution, copying or use of this e-mail or its contents is strictly prohibited. If you have received this e-mail in error, please notify the sender by responding to the e-mail and then delete the e-mail immediately; you may also contact us at +1 410-571-5186.

**Attachments:**
- image001.png

# EXHIBIT H

*Plaintiff's Notice of Default — Demand for Payment — and Voluntary Surrender & Security Release Agreement, October 21, 2025 (Borrower signature blocks blank)*

Oceanetics, Inc. v. Marine1, LLC, No. 4:26-cv-00090 (E.D. Va.)

## NOTICE OF DEFAULT, DEMAND FOR PAYMENT, AND VOLUNTARY SURRENDER & SECURITY RELEASE AGREEMENT

This combined Notice of Default, Demand for Payment, and Voluntary Surrender & Security Release Agreement ("Agreement") is entered into and effective as of 10/21/2025

BETWEEN:

Oceanetics, Inc., formerly known as Truston, Inc., a Virginia corporation ("Lender"), with its principal place of business at 111 Annapolis St., Annapolis, MD 21401.

AND:

Marine 1, LLC, a Virginia limited liability company ("Borrower"), by and through its principal, Scott Snow.

## SECTION I – NOTICE OF DEFAULT AND DEMAND FOR PAYMENT

WHEREAS, on December 5, 2018, Borrower executed a loan agreement ("Loan Agreement") in favor of Lender for the principal amount of $90,000.00, bearing fixed annual interest at a rate of 0.2%, payable over a term of sixty-four (64) months through installment payments of $1,507.64, with an initial deferral period of three (3) months. Installment payments not paid within 30 days were subject to late charges of 10% of the payment, not to exceed $500 for any such payment.

WHEREAS, to secure repayment of the Loan, Borrower pledged the vessel M/V Warrier Princess ("Collateral") as security, and the Loan Agreement provides:

"If Borrower defaults on this loan, Lender may take possession of and sell M/V Warrier Princess to satisfy Borrower's obligations under this Agreement."

WHEREAS, the Loan Agreement further provides:

"If for any reason Borrower fails to make any payment within sixty (60) days of its due date, Borrower shall be in default."

Lender hereby notifies Borrower that a payment due under the Loan Agreement has not been made within sixty (60) days of its due date, and Borrower is therefore in default. As of the date of this Notice, the total amount due and payable, including principal, interest, and any applicable charges, is:

$61,505.36 (Loan Balance $52,309.00 / Late Fees $9,196.36)

Pursuant to the terms of the Loan Agreement and applicable Virginia law, Borrower is hereby provided with thirty (30) days from the date of this Notice to cure this default in full. To cure the default, Borrower must remit the total amount stated above, along with any applicable fees or charges, to Lender on or before the expiration of this thirty (30) day period.

If Borrower fails to cure the default within the thirty (30) day period, Lender will exercise its rights under the Loan Agreement, including but not limited to taking possession of and selling the pledged collateral, M/V Warrier Princess, to satisfy Borrower's obligations.

## SECTION II – VOLUNTARY SURRENDER AND SECURITY RELEASE AGREEMENT

This section shall take effect only upon Borrower's voluntary decision to surrender the pledged collateral described below. Execution of this section shall not constitute a waiver of Lender's rights and remedies under Section I.

Borrower acknowledges that the following vessel was pledged as collateral under the Loan Agreement and hereby voluntarily relinquishes and transfers possession of said vessel and title of said vessel to Lender:

- Vessel Name: M/V Warrier Princess


Borrower affirms that:
- Borrower is the lawful owner of the vessel.
- The vessel is free and clear of all liens and encumbrances (or such liens are disclosed in Exhibit A).
- Borrower voluntarily waives, releases, and relinquishes any and all rights, title, and interest in the vessel to Lender.

Lender is hereby authorized to retain, sell, transfer, or otherwise dispose of the vessel in its sole discretion and in a commercially reasonable manner under applicable law. Borrower waives any right to notice of disposition, right of redemption, right to surplus proceeds, or any other right arising under Article 9 of the Uniform Commercial Code or otherwise.

Borrower further releases and discharges Lender, its successors, agents, and assigns from any and all claims or causes of action arising from the Loan Agreement, the vessel, or its disposition.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

LENDER:
Oceanetics, Inc., formerly known as Truston, Inc.
By: _____
Name: Lesley Levicki
Title: Chief Financial Officer
Date: ___22 OCT. 2025_____

BORROWER:
Marine 1, LLC
By: _____
Name: Scott Snow
Title: Principal
Date: _____

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF VIRGINIA**

**Newport News Division**

**OCEANETICS, INC.,**

Plaintiff,

v.                                  Civil Action No. 4:26-cv-00090-MSD-DEM

**MARINE1, LLC,**

Defendant.

**DEFENDANT MARINE1, LLC'S DISCLOSURE STATEMENT**

**PURSUANT TO FED. R. CIV. P. 7.1 AND LOCAL CIVIL RULE 7.1**

Marine1, LLC submits the following combined financial-interest and citizenship disclosure statement:

1.      Marine1, LLC is a non-publicly traded limited liability company formed under Michigan law.

2.      Marine1, LLC has no parent, subsidiary, affiliate, trust, or other related entity that has issued stock or debt securities to the public, and no publicly held entity owns ten percent or more of Marine1.

3.      Scott T. Snow is Marine1, LLC's sole owner, sole member, and sole manager.

4.      For purposes of diversity jurisdiction, Marine1 states that before this action was filed on June 12, 2026, Scott T. Snow had established and maintained his domicile in Virginia, where he has resided since approximately 2017, and intended to remain in Virginia indefinitely. Marine1 therefore states that Scott T. Snow, and consequently Marine1, were citizens of Virginia when the action was filed.

5.      No other individual or entity has citizenship attributable to Marine1, LLC.

Respectfully submitted,

**MARINE1, LLC**

By:

Scott T. Snow

Sole Member and Manager

Submitting this protective filing solely to request time for licensed counsel to appear

300 Dandy Loop Road

Yorktown, Virginia 23692

(757) 909-0490

stsnow@comcast.net

Dated: July 28, 2026

**CERTIFICATE OF SERVICE**

I certify that on July 28, 2026, after signing this document, I served a true and correct copy of the foregoing Disclosure Statement by sending it via United Parcel Service (UPS), delivery prepaid, UPS Tracking No. 1ZL7T 79C 29 1747 3050, addressed to counsel for Plaintiff at the address below. I also sent a courtesy copy by email to jchapman@cwm-law.com and lbarkley@cwm-law.com:

James L. Chapman IV, Esq.

Lawson P. Barkley, Esq.

Crenshaw, Ware & Martin, P.L.C.

150 West Main Street, Suite 1923

Norfolk, Virginia 23510

Scott T. Snow

## GHOSTWRITING CERTIFICATION

I declare under penalty of perjury that no attorney has prepared, or assisted in the preparation of, this document.

Scott T. Snow (print or type)

Signature:

Executed on: July 28, 2026